Robert DEVLIN, Plaintiff,

v.

Patti SMALLEY, individually and in her representative capacity, Steven Sorensen, individually and in his representative capacity, Sandy City Police Department, Sandy City, the Utah Department of Human Services, and the State of Utah, Defendants.

No. 2:96 CV 546 K.

United States District Court,
D. Utah,
Central Division.

May 18, 1998.

**1318**

David P. White, David Paul White & Associates, Murray, UT, Ronald C. Barker, Salt Lake City, UT, Mitchell R. Barker, Barker Law Office, West Valley City, UT, for Robert Devlin.

Allan L. Larson, Harry H. Souvall, Richard A. Van Wagoner, Snow Christensen & Martineau, Salt Lake City, UT, Elizabeth King, Utah Attorney General's Office Litigation Unit, Salt Lake City, UT, James W. Robinson, Utah Attorney General's Office, Salt Lake City, UT, for Patty Smalley and Sandy City Police Dept.

Reed M. Stringham, III, Utah Attorney General's Office, Salt Lake City, UT, Elizabeth King, Utah Attorney General's Office Litigation Unit, Salt Lake City, UT, Richard D. Wyss, II, Utah Attorney General's Office, Salt Lake City, UT, for Steven Sorensen, Department of Human Services and State of Utah.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KIMBALL, District Judge.

This case is before the Court on Defendants' motions for summary judgment and Plaintiff's motion to join additional plaintiffs.[1]

### I. BACKGROUND

This action arises in the aftermath of an investigation undertaken by the Division of Child and Family Services ("DFS") within the Utah Department of Human Services ("DHS") into allegations of child sex abuse made against Plaintiff Robert Devlin ("Devlin"). Devlin owns and operates two day care facilities regulated by DHS.

On December 3, 1992, Sandy City Police Officer Patti Smalley ("Officer Smalley") received a complaint about possible sexual abuse involving Devlin. The child's mother told Officer Smalley that her daughter had been at Devlin's center during the previous month. Officer Smalley interviewed the child that day, who told her that Devlin had touched her vaginal area. Officer Smalley then contacted Devlin, who agreed to be interviewed, but later contacted Officer

---

**1.** This motion is not considered inasmuch as the case is resolved on the other grounds set forth   herein.

Smalley through his lawyer to say that he would not be coming.

Utah's child abuse reporting act requires any person who has reason to believe that a child has been subjected to sexual abuse to immediately notify the nearest law enforcement agency or office of DFS. "On receipt of this notice," Utah law mandates that "the peace officer or law enforcement agency shall immediately notify the nearest office of [DFS]." *Utah Code Ann. § 62A–4a–403(1).*[2]

DFS has the duty to review incoming allegations of abuse and conduct a thorough investigation "when there is reasonable cause to suspect a situation of abuse." *§ 62A–4a–409(1).* DFS must make a written report of its investigation, including "a determination regarding whether the alleged abuse or neglect was substantiated, unsubstantiated, or inconclusive." *§ 62A–4a–409(3).* Only DFS can "substantiate" an abuse allegation in this sense.

The Office of Licensing within DHS may place a licensee on "conditional" status when the licensee is the subject of an abuse allegation or investigation. *Utah Admin. R. § R501–1–5(A)(4).* The Office of Licensing must give the licensee written notice of the conditional status, which must include a statement of the cause for the action and inform the licensee of the licensee's right to a hearing or appeal. *§ R501–1–5(B)(2).*

During the conditional period, the licensee's program continues in operation and the licensee continues to receive state payment for services to consumers and referral of consumers from DHS. *Id.* However, during an investigation of abuse, the Office of Licensing must notify consumers and parents of the conditional status. *Id.* The duration of the conditional period is determined by the Office of Licensing, but must allow sufficient time for completion of the investigation. *Id.*

In compliance with the statute, Officer Smalley reported the allegation to DFS on December 3, 1992. As a consequence, Devlin's two licenses were placed on conditional status. In April 1993, the deputy county attorney declined to prosecute. On June 1, 1993, DFS concluded its investigation without substantiating the charge and restored Devlin's licenses to unconditional or standard status.

On October 8, 1993, Officer Smalley received a second complaint about possible sexual abuse involving Devlin. The child's mother told Officer Smalley that her 5–year–old daughter had been attending Devlin's center for three weeks and had been acting differently, particularly around men. Officer Smalley made an appointment to interview the child on October 15th. Before the interview occurred, the child's mother called again to report that the child had told her grandmother that Devlin had touched her. During the interview, Officer Smalley asked the child where Devlin had touched her. In response, the child pointed to her vaginal area and said that it happened under her skirt and on top of her underpants.

The parties dispute exactly when Officer Smalley reported the allegation to DFS. Devlin claims Officer Smalley did so on October 8, 1993—before Officer Smalley knew that the child had said Devlin touched her. Upon receipt of Officer Smalley's report, DFS assigned a caseworker to investigate the matter, Steven Sorensen.

On October 19th, Officer Smalley and Sorensen conducted a videotaped interview of the child, during which she again stated that Devlin touched her vaginal area. Based upon that interview and information received from the child's mother, Sorensen substantiated the allegation.

Based on the substantiated allegation, on November 12, 1993, the Office of Licensing again placed Devlin's license on conditional status. DFS took the further step of placing Devlin's name on a database that contains all the reports of abuse and neglect received by DFS, including documentation regarding whether a particular report was substantiated or unsubstantiated. DFS is required by law to maintain a database that contains such information. *See Utah Code Ann. § 62A–4a–116.* Officer Smalley continued to investigate the allegation for a period of time, but

---

2. The provisions in Utah's child abuse reporting act were renumbered in 1994. This memorandum decision utilizes the numbering system currently in effect.

after screening the case, the deputy county attorney again declined to prosecute.

On June 27, 1994, the Division of Licensing notified Devlin that the agency intended to revoke his licenses and, as required by regulation, provided him with a statement of the cause for the action and informed him of his right to a hearing and an appeal. *See § R501–1–5(B)(2).* Devlin requested such a hearing, which was held at the end of October 1994. On November 21, 1994, an order was issued overruling Sorensen's substantiation and directing DFS to amend the database accordingly. Devlin's licenses were never revoked.

On June 24, 1996, Devlin filed the instant lawsuit, alleging that Officer Smalley and Sorensen, motivated by animus against him as a male day care provider, improperly investigated and recklessly fabricated the abuse charges, resulting in the wrongful suspension of his license and placement of his name on the DFS database. His complaint names six defendants and alleges thirteen separate claims, which include denial of due process, negligent investigation, defamation, and gender discrimination under 42 U.S.C. § 1983.

## II. STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element.

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). While the non-movant is entitled to the benefit of whatever reasonable inferences there are in its favor, the reasonableness of those inferences is scrutinized in light of the undisputed facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson,* 477 U.S at 247–48, 106 S.Ct. at 2510 *(emphasis in original).*

## III. DISCUSSION

The State of Utah, DHS, and Sorensen (collectively, the "State Defendants") move for summary judgment, as do Sandy City [3] and Sorensen (collectively, the "Sandy Defendants").

### A. Devlin's Federal Due Process Claims against the State Defendants.

Devlin alleges that the manner in which Sorensen and DFS investigated the 1993 abuse allegation violated the federal Due Process Clause.[4] Specifically, Devlin alleges that Sorensen falsified the report that Devlin sexually abused a child, that DFS substantiated the charges and placed Devlin's name on the database without providing him either a notice or a hearing, that DFS failed to remove his name from the database when ordered to do so, and that DFS failed

---

**3.** Devlin names the Sandy City Police Department as a defendant, but the entity has no existence separate from Sandy City.

**4.** Devlin has attempted to plead a cause of action under Article 1, Section 7 of the Utah State Constitution. This district does not recognize direct statutory or common law private rights of action for violations of provisions of the Utah State Constitution that are not self-executing. *See J.B. v. Washington County,* 905 F.Supp. 979, 991 n. 16 (D.Utah 1995) *(explaining current state of law in this regard).*

to develop adequate training guidelines for the investigation of abuse allegations.

■ The State Defendants argue that Devlin's claims against them are barred inasmuch as they may not be held liable under *42 U.S.C. § 1983,* the federal statute that provides a remedy for deprivations of federal rights committed by state actors. Specifically, § 1983 provides a remedy against "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects or causes to be subjected ... any citizen ... to the deprivation of any rights, privileges or immunities secured by the Constitution." The Supreme Court has ruled that states, their agencies, and state officials sued in their official capacities [5] are not "persons" for purposes of § 1983 analysis. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989).

Devlin attempts to avoid this result by arguing that his complaint does not mention § 1983 in connection with his Due Process claims. The fact that he did not specifically refer to § 1983 in pleading his claims is irrelevant. Section 1983 is the vehicle through which federal rights are enforced against state actors, and the case law construing § 1983 applies to bar Devlin's claims.[6]

**B. Devlin's Federal Due Process Claims against Sorensen and Officer Smalley.**

■ Officer Smalley and Sorensen assert that they are entitled to qualified immunity to the extent that they may have liability in a personal capacity. Qualified immunity is available unless an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982) *(quoting Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).* The presence or absence of qualified immunity is a question of law. *Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.1993).·

■ Once the defense of qualified immunity is raised, the burden shifts to the plaintiff to demonstrate: (i) that the defendants' actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct at issue. *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996). To demonstrate that these defendants violated Devlin's federal due process rights, Devlin must establish that they acted knowingly or with reckless disregard for the truth. Claims of negligence are insufficient to prove constitutional violations. *Beard v. City of Northglenn,* 24 F.3d 110, 115 (10th Cir.1994).

■ To establish at least recklessness, Devlin must present evidence that they "in fact entertained serious doubts" as to the truth of the abuse allegations. *Id.* 24 F.3d at 116 *(internal quotation marks and citation omitted).* The existence of such serious doubt may be inferred from circumstances demonstrating "obvious reason to doubt the veracity" of the abuse allegation. *Id.*

*1. Officer Smalley's Actions.*

Devlin asserts that Officer Smalley violated his constitutional right to due process by reporting the 1993 allegation of sexual abuse to DFS before she had a justifiable reason to believe that Devlin was involved. Devlin alleges that Officer Smalley reported to DFS that an allegation of child sexual abuse had been made against Devlin on October 8, 1993,

**5.** "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71, 109 S.Ct. at 2312.

**6.** "Congress enacted § 1983 to serve as the means by which claims like plaintiffs can be brought under the Due Process Clause of the Fourteenth Amendment in place of asserting the claim more generally under the Fourteenth Amendment. In support of this point, courts have held that where a party brings a Fourteenth Amendment claim under § 1983, presentation of that exact claim by 'a direct action [under the Fourteenth Amendment] is obviated.'" *Verdon v. Consolidated Rail Corp.,* 828 F.Supp. 1129, 1136 (S.D.N.Y.1993) *(quoting Lombard v. Board of Ed.,* 784 F.Supp. 1029, 1035 (E.D.N.Y.1992)).

when, on that date, Officer Smalley knew only that the child had been acting differently and had been staying at Devlin's center. Officer Smalley did not learn that the child had told her grandmother that Devlin had touched her until a few days later.

■ Assuming for the sake of argument that Officer Smalley reported to DFS that she had reason to believe that Devlin abused a child before Officer Smalley knew that the child had explicitly accused Devlin, this would not demonstrate that Officer Smalley acted with reckless disregard for the truth. Officer Smalley was obligated by statute to notify DFS "immediately" when she had "reason to believe" abuse had occurred. Under the statutory scheme, DFS bears the responsibility of evaluating incoming reports to determine whether there is "reasonable cause to suspect a situation of abuse" and, when there is, to conduct a thorough investigation. *Utah Code Ann. § 62A–4a–409(1).*

The statute is specifically designed to prevent child abuse by requiring individuals to report suspected abuse to DFS without delay—without conducting their own investigations and without waiting for obvious signs of abuse to appear. The statute accomplishes this purpose by mandating that individuals report suspected abuse to DFS immediately, by providing criminal penalties for those who do not, and by granting immunity from liability to individuals who comply in good faith.[7] *Utah Code Ann. §§ 62A–4a–403, 62A–4a–411, and 62A–4a–410, respectively.* To shift the burden of investigation to the individual making the report would be to require the very conduct that the statute is designed to discourage.

Devlin has failed his burden to negate Officer Smalley's entitlement to qualified immunity by putting forth facts on which to build a case of recklessness, either directly or

by inference. The evidence shows that Officer Smalley merely followed the law.

### 2. *Sorensen's Actions.*

Devlin alleges that Sorensen's investigation was flawed inasmuch as Sorensen's report regarding his interview of the child contains errors,[8] that inconsistencies in the child's account of the abuse demonstrate that the allegation is untrue, and that Sorensen failed to review a report regarding an interview of Devlin conducted by a Sandy City police investigator, Detective Nosack, before substantiating the allegation.

■ This Court's role is not to decide whether Sorensen correctly substantiated the abuse allegation, nor is it this Court's role to validate the legitimacy of Sorensen's investigative methods or thought processes. This Court's role is to examine the summary judgment record to determine if Devlin has put forward evidence that creates a genuine dispute over whether Sorensen entertained serious doubt about the truth of the abuse allegation that he substantiated. The record is devoid of such evidence.

■ Devlin has shown that Sorensen's report contains mistakes, but fails to provide any "grounds for believing that the mistake was the result of any invidious animus." *Beard,* 24 F.3d at 116. Nor do inconsistencies in the statements of a very young child constitute "obvious reason to doubt" the child's account in a circumstance when the inconsistencies do not concern the child's unwavering assertion that Devlin touched her. Finally, the Court of Appeals for the Tenth Circuit has specifically held that failure to investigate a matter fully is an insufficient basis for liability. *Id.*

Thus, Devlin has also failed to defeat Sorensen's claim to qualified immunity.

---

7. Indeed, the latter provision serves an independent bar to Devlin's suit against Smalley, as discussed *infra*.

8. Devlin's allegation that Sorensen falsified reports is based on a report Sorensen prepared after interviewing the child, which Devlin alleges was inaccurate for the following reasons: (i) Sorensen reported that the abuse occurred on

"numerous occasions" when the child discussed only one or two instances, (ii) Sorensen reported that Devlin "fondled" the child when the child said Devlin touched her, and (iii) Sorensen reported that the touching occurred under the child's clothing when she said the touching occurred over her clothing.

## C. Devlin's Federal Due Process Claims against the Sandy Defendants.

To the extent that Devlin's action against Sandy City is based solely on a theory of respondeat superior for Officer Smalley's actions, his claim against Sandy City is also barred. Municipalities are not liable for the acts of their employees under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The Sandy Defendants also assert that Devlin's constitutional claims against them fail because he cannot establish proximate cause inasmuch as the undisputed evidence shows that the Division of Licensing refrained from taking any action with respect to Devlin's license until after Sorensen concluded his investigation and report.

Devlin makes no response to these arguments, and, accordingly, Devlin's constitutional claims against the Sandy Defendants are barred.

## D. Devlin's Claim that the DFS Database is Unconstitutional.

Devlin also claims that the rules and regulations governing the DFS database are unconstitutional on their face and as applied under the Due Process Clause.[9] Devlin's complaint contains no other details as to the basis for this assertion. However, the only statute regulating the database is *Utah Code Ann. § 62A–4a–116,* which merely requires DFS to maintain "a management information system" containing the specified information. A few provisions in the Utah Administrative Code require the Office of Licensing to use the database to screen applicants for licensure, but the provisions do not mandate that the Office of Licensing take any particular action with respect to the application as a result. The point of the database, as the statute itself indicates, is to facilitate the sharing of information between departments within DHS.

This Court concludes that the scheme is not facially unconstitutional, nor is it unconstitutional as applied in this instance. *See Griffin v. Strong,* 983 F.2d 1544, 1548 (10th Cir.1993) *(reviewing Utah's "compelling" interest in "investigating cases of alleged child abuse" for purposes of Due Process analysis).*

## E. Devlin's Claims for Gender Discrimination.

Devlin has alleged claims of discrimination in violation of § 1983 against all of the defendants. To the extent that Devlin asserts claims against the State, DHS, or Sorensen in his official capacity, Devlin's claims are barred on the grounds that those defendants are not "persons" within the meaning of § 1983, as explained above. Because Devlin's action against Sandy City is based solely on a theory of respondeat superior for Officer Smalley's actions, his claim against Sandy City is also barred. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

To successfully assert such a claim against either Officer Smalley or Sorensen in their personal capacity, Devlin must establish that they intentionally discriminated against him because he is male. *Lewis v. City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990). "Where a defendant's subjective intent is an element of plaintiff's claim and the defendant moves for summary judgment based on qualified immunity, the defendant must make a prima facie showing of the 'objective reasonableness' of the challenged conduct." *Id.* 903 F.2d at 755. The burden then shifts to the plaintiff to produce specific evidence that his actions were improperly motivated. *Id.* at 758.

9. Devlin claims that he suffered emotional damages, damages to his business and personal reputation, and loss of business. However, denial of a license usually implicates a property interest. Resolution of the question of what process is due to protect against an erroneous deprivation of a protectable property interest requires consideration of (i) the nature and weight of the private interest affected by the official action challenged; (ii) the risk of an erroneous deprivation of such interest as a consequence of the summary procedures used; and (iii) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought. *See Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979).

■ . As discussed above, Officer Smalley's actions in reporting instances of suspected abuse to DFS were not only objectively reasonable but required by law. Sorensen has supported his assertion that his action in substantiating the abuse allegation was objectively reasonable by pointing out that he interviewed both the child and her mother and found that their statements indicated inappropriate touching. Sorensen has made a prima facie showing of the objective reasonableness of his actions.

■ Devlin has failed his burden to produce specific evidence that their actions were actually motivated by animus against Devlin as a male. Devlin may not defeat these defendants' properly supported motion for summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendants' denial of an improper motive. Statements allegedly made by other DFS employees are not relevant in this regard. Accordingly, his discrimination claims cannot stand.

### F. Devlin's Negligence Claims.

■ Devlin alleges that Officer Smalley and Sorensen negligently investigated the abuse allegations. Defendants argue that this claim is barred by the Utah Governmental Immunity Act, which governs the procedure for suing the State of Utah and its agencies · and employees.[10] The remedies provided · by the act. are exclusive of any others, and, in that way, the act bars any claim against Sorensen or Smalley in their personal capacity. *Utah Code Ann. § 63–30–4(4).*

■ The act bars Devlin's negligence claim against them in their official capacity in two ways. First, Utah has not waived its governmental immunity for negligence arising out of the "institution or prosecution of any judicial or administrative proceedings, even if malicious or without probable cause." *See Utah Code Ann. § 63–30–10(5).* Second, the act bars claims against the State and its employees "unless notice of claim is filed

with the attorney general and the agency concerned within one year after the claim arises." *Utah Code Ann. § 63–30–12.* Devlin did not file a notice of claim until May 30, 1995. Any claims against Officer Smalley and Sorensen are also barred on that ground.

■ Devlin's negligence claims against Officer Smalley are also barred on the ground that she is entitled to immunity under Utah's child abuse reporting act, which, as mentioned above, provides immunity to any official that reports an allegation of child sex abuse to DFS. *Utah Code Ann. § 62A–4–410.* Because Sandy City's liability is derivative of Officer Smalley's, Devlin's negligence claims against Sandy City are also barred.

### G. Devlin's Defamation Claim.

■ Devlin alleges that during a period up to February 5, 1995, the State Defendants engaged in a scheme to harm Devlin by publishing the charges of child sex abuse against him on the DFS database. The State Defendants argue that this claim is barred on two grounds. The State Defendants first argue that the claim is barred by Utah's Governmental Immunity Act, which expressly preserves governmental immunity for injuries arising from slander or deceit. *See Utah Code Ann. § 63–30–10(2).* The State Defendants also argue the claim is time barred inasmuch as Devlin's suit was not filed before expiration of the one-year statute of limitations applicable to suits for slander and libel. *See Utah Code Ann. § 78–12–29(4).*

Both arguments are valid and apply to bar Devlin's defamation claim.

### H. Devlin's Claims for Damages against the State Defendants.

■ The State Defendants argue that Devlin's damage claims against the State, DHS, and Sorensen in his official capacity are barred by the Eleventh Amendment, which bars all claims against a state and its agencies in federal court. *Will,* 491 U.S. at

---

**10.** Utah's Governmental Immunity Act applies to the State and its political subdivisions, including

cities. *See Utah Code Ann. § 63–30–2(3) and (7).*

66, 109 S.Ct. at 2309. This argument is also valid.

## I. Devlin's Claims for Injunctive Relief.

A federal court has jurisdiction of "an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). Claims for injunctive relief present a case or controversy only if the plaintiff is in immediate danger of sustaining a direct injury. *Id.*

Devlin's claim for injunctive relief does not present a case or controversy. To enjoin application of the laws and regulations governing the DFS database, Devlin must prove it is likely that he will be wrongfully accused of child sex abuse, be improperly investigated and substantiated as a child abuser, be placed on the database, and that DFS would refuse an administrative directive to remove the finding of substantiation. Under *Lyons,* such speculative chains of events are insufficient.

Devlin also alleges that two individuals who contacted the DFS or the Office of Licensing after DFS was ordered to correct the record were told that Devlin's record contained a substantiated allegation. Devlin points to places in his deposition testimony where he repeats the erroneous information that these individuals were allegedly given. DHS submitted an affidavit of the official in charge of the Office of Licensing. The official verifies that the portion of Devlin's file that is open for public review makes no mention of the allegations and that her subordinates do not reveal anything about the allegations in response to public inquiries. Again, the evidence submitted by Devlin is insufficient to support Devlin's claim.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment are granted. This case is, accordingly, dismissed in its entirety. Each party shall bear its own costs.