IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Sean Barnett, | ) | AMENDED OPINION[1] |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20100562-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (January 6, 2012 ) |
| Polly Adams, | ) | |
| | ) | 2012 UT App 6 |
| Respondent and Appellant. | ) | |

-----

Third District Juvenile, Salt Lake Department, 1036546
The Honorable Andrew A. Valdez

Attorneys:     Mary Rutledge, Payson, for Appellant
                   Ezekiel R. Dumke IV, Salt Lake City, for Appellee
                   Martha Pierce, Salt Lake City, Guardian ad Litem

-----

Before Judges Davis, McHugh, and Thorne.

DAVIS, Presiding Judge:

¶1     Polly Adams (Mother) appeals the juvenile court's grant of Sean Barnett's (Father) child protective order petition. We dismiss the appeal because the issues are moot.

---

1. This Amended Opinion replaces the Opinion in Case No. 20100562-CA issued on December 1, 2011.

BACKGROUND

¶2     Mother and Father are the parents of J.B. (Child).  The two parents were never married to each other.  Mother was awarded primary custody of Child in a paternity case in 2004.  Father filed a child protective order petition in the juvenile court on May 26, 2010, based upon Child's statements to both Father and Child's school principal that Mother beat him the previous night and "had been hitting him for a long time."  The juvenile court granted an ex parte protective order, which gave Father temporary custody of Child, and set a hearing on the petition for June 10, 2010.  *See generally* Utah Code Ann. § 78B-7-203(1) (Supp. 2011) ("If an ex parte order is granted, the court shall schedule a hearing within 20 days after the ex parte determination.").  Throughout the June 10 hearing, the juvenile court posed questions to each party's counsel and at times interrupted counsel as they answered.  For instance, Mother's objections were often interrupted before her counsel could articulate the reasons behind the objection.  Her objections were primarily on hearsay grounds, arguing that the statements in Father's protective order petition, the guardian ad litem's (GAL) statements pertaining to her interview with Child, and the report created by the Division of Child and Family Services (DCFS) constituted inadmissible hearsay.  Toward the end of the proceeding, Mother's counsel repeated these objections, stating, "[T]here is no testimony other than . . . hearsay . . . ."  The juvenile court summarily overruled the objections, agreeing with the GAL that the hearing was "dispositional in nature and the rules of juvenile procedure permit hearsay testimony [in dispositional proceedings]."  The juvenile court found that Child was "in imminent danger of abuse" and concluded that it was "not safe [for him] to return home without instituting some form of protective supervision services or a safety plan."  The juvenile court granted Father's petition in a Final Protective Order against Mother (the protective order).  The protective order provided that Child be "placed in the temporary custody of [Father]," authorized supervised visitation for Mother, and ordered DCFS "to provide protective supervision services to the child" and "to establish a safety plan [for Mother and Father to] follow."[2]  The protective order was to expire "150 days from the date of the order," or on or around November 10, 2010.  Mother filed an appeal from the protective order on July 8, 2010.

---

[2]The protective order also ordered the parties to participate in family counseling.

## ISSUE AND STANDARD OF REVIEW

¶3     Mother appeals the protective order, arguing that the evidence supporting it consisted entirely of hearsay statements that the juvenile court erred in admitting, that the protective order was against the clear weight of the admissible evidence, and that Mother's due process rights were violated because the juvenile court assumed Father's burden of proof by actively questioning the witnesses.

¶4     Before addressing Mother's arguments, however, we must be satisfied that the issues raised are not moot or that an exception to the mootness doctrine applies.[3]  A case is deemed moot "[i]f the requested judicial relief cannot affect the rights of the litigants." *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 21, 203 P.3d 943 (alteration in original) (internal quotation marks omitted).  "Because mootness is a matter of judicial policy, the ultimate determination of whether to address an issue that is technically moot rests in the discretion of this court." *In re C.D.*, 2010 UT 66, ¶ 13, 245 P.3d 724 (internal quotation marks omitted).  In addition,

> [t]he function of appellate courts, like that of courts
> generally, is not to give opinions on merely abstract or
> theoretical matters, but only to decide actual controversies
> injuriously affecting the rights of some party to the litigation,
> and it has been held that questions or cases which have
> become moot or academic are not a proper subject to review.

*McRae v. Jackson*, 526 P.2d 1190, 1191 (Utah 1974) (internal quotation marks omitted).

---

[3]The GAL argues that the protective order does not constitute a final, appealable order because it has been consolidated with a paternity modification proceeding that is pending, and has possibly been completed, in the district court.  Because another panel of this court denied the GAL's motion to supplement the record, the record presented on appeal does not contain any information for us to verify this assertion—not even an order from the juvenile court transferring the case to the district court or a case number to confirm that there is in fact an active proceeding in the district court dealing with issues relevant to this appeal.  Accordingly, we do not address the GAL's finality argument.

ANALYSIS

¶5     Here, the protective order against Mother "presumably expired by its own terms," *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989) (mem.), on or around November 10, 2010, and there is no information in the record to indicate it was continued in effect.  Consequently, reversal of the juvenile court's grant of the protective order cannot affect Mother's rights because the protective order, and the orders and conditions contained therein, should have expired roughly one year ago.  Thus, the issues presented on appeal are moot.

### I.  Collateral Consequences Exception to Mootness

¶6     Mother argues that we should nonetheless review her mooted claims because the doctrine of collateral consequences applies.[4]  We disagree.

¶7     "Where collateral legal consequences may result from an adverse decision, courts have generally held an issue not moot and rendered a decision on the merits."  *In re Giles*, 657 P.2d 285, 286 (Utah 1982) (citing *Carafas v. LaVallee,* 391 U.S. 234 (1968)); *see also Putman v. Kennedy*, 900 A.2d 1256, 1261 (Conn. 2006) ("[T]he court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur . . . ." (omission in original) (internal quotation marks omitted)).  This exception to mootness is generally applied in criminal cases.  *See In re Giles,* 657 P.2d at 286 ("The doctrine of collateral legal consequences is chiefly applied in criminal cases where the absence or presence of those consequences may determine a criminal's chance of rehabilitation or recidivism." (citing *Sibron v. New York,* 392 U.S. 40 (1968))); *see also Sibron*, 392 U.S. at 57 ("[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."); *Gardiner v. York*, 2010 UT App 108, ¶ 33, 233 P.3d 500 (same), *cert. denied*, 238 P.3d 443 (Utah 2010).  Accordingly, the examples of collateral consequences that preclude a case from mootness are relatively limited.  *See, e.g., In re Giles*, 657 P.2d at 286-87 (applying the collateral consequences exception "to patients of mental hospitals who face . . . deprivations of liberty [similar to prisoners] and whose commitment and hospitalization must stand scrutiny on the merits when

---

[4]We denied the GAL's first motion to dismiss Mother's appeal on mootness grounds and requested that the parties brief, "along with all other relevant issues, . . . the mootness argument raised by the [GAL] and the issue of whether any potential collateral consequences preclude dismissal on mootness grounds."

challenged"); *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981) (listing possible collateral consequences in the criminal law context).

¶8 However, one commonality among the applications of the collateral consequences doctrine is the need for the consequences complained of to be more than merely speculative. *See, e.g., Spencer v. Kemna,* 523 U.S. 1, 14 (1998) (holding that "a possibility rather than a certainty or even a probability" of suffering a collateral consequence is insufficient to overcome mootness); *Fratis v. Ortiz*, 190 F. App'x 686, 688 (10th Cir. 2006) (applying *Spencer*, 523 U.S. at 14, and holding that collateral consequences must be shown, not presumed); *State v. Moore*, 2009 UT App 128, ¶ 17, 210 P.3d 967 (explaining that collateral consequences "will not [be] presume[d]" when a party has failed to show that the consequences complained of are "actual[ and] adverse"). Thus, a litigant must show that the collateral consequences complained of are not merely hypothetical or possible but that they are probable and represent actual and adverse consequences. *See Spencer*, 523 U.S. at 14; *Moore*, 2009 UT App 128, ¶ 17; *cf. Putman*, 900 A.2d at 1261-62 (noting that Connecticut recognizes a diverse array of collateral consequences, "includ[ing] harm to a defendant's reputation as a result of the judgment at issue," and that a "litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur . . . by more than mere conjecture, but need not demonstrate that these consequences are more probable than not").

¶9 Assuming without deciding that the collateral consequences doctrine ought to apply in this civil context, Mother's alleged collateral consequences are merely speculative. Specifically, Mother argues that "the juvenile court's erroneous adjudication of child abuse" in the protective order prompted Father to file a petition to modify the Order of Paternity, which resulted in Mother losing primary physical custody of Child. Additionally, Mother asserts that as a result of this adjudication of abuse she "is now listed on the management information system [MIS], which listing legally impairs her right to foster a child, adopt a child, or work with children."[5]

---

[5]Utah Code section 62A-4a-1003 requires DCFS to maintain a management information system that contains information regarding the complete history of each child involved in a child welfare case. *See* Utah Code Ann. § 62A-4a-1003(2) (2011). Among other things, a child welfare case history filed in the MIS should include "a record of all reports of abuse or neglect received by the division with regard to that child's parent[ or] parents" and indicate the status and findings of those reports. *Id.* § 62A-4a-1003(2)(e). This case history is "exclusively for the purposes of foster parent

(continued...)

Mother, however, does not claim that she has attempted or even plans to exercise "her right to foster a child, adopt a child, or work with children" or that being listed in the MIS actually impaired her ability to pursue any of these things.[6] She has simply listed potential legal impairments that generally impact a person listed in the MIS, not injuries that she has actually suffered or will even likely suffer based on a pending application to foster, adopt, or work with children, or even based on any expressed intent by Mother to pursue a foster placement, adoption, or occupation with children.[7] Thus, assuming that the collateral consequences doctrine ought to apply in this instance, "the hypothetical impact" of Mother's listing in the MIS "does not create a collateral legal

---

[5](...continued)
licensure and monitoring." *Id.* § 62A-4a-1003(2). Additionally, "[w]ith regard to all child protective services cases, the [MIS] shall: (a) monitor the compliance of each case with . . . [DCFS] rule and policy . . . and (b) include [identifying information] of the alleged perpetrator . . . ." *Id.* § 62A-4a-1003(4). The information in the MIS is accessible within DCFS "upon the approval of the executive director, on a need-to-know basis," *id.* § 62A-4a-1003(5), and may be accessible to a limited number of other individuals under certain circumstances, *see id.* § 62A-4a-1003(6) (noting that DCFS may allow "its contract providers, court clerks . . . , and the Office of the Guardian Ad Litem to have limited access to the [MIS]"); *id.* § 62A-4a-1006 (recognizing that the Licensing Information System, a subsection of the MIS, is accessible outside DCFS, but only for limited purposes and by specific organizations); *see also Devlin v. Smalley*, 4 F. Supp. 2d 1315, 1323 (D. Utah 1998) (mem.) ("A few provisions in the Utah Administrative Code require the Office of Licensing to use the [MIS] database to screen applicants for licensure, but the provisions do not mandate that the Office of Licensing take any particular action with respect to the application as a result. The point of the database, as the statute itself indicates, is to facilitate the sharing of information between departments within [the Department of Human Services].").

[6]Mother provides no evidence to substantiate her assertion that she is now listed in the MIS. For purposes of this appeal, we assume that her assertion is accurate.

[7]In fact, the record indicates that most of Mother's work experience has been in administrative settings, in the food service industry, and in mortgage lending. Notably absent from the record is any indication that Mother has ever held a position working with children.

consequence that prevents the conclusion that [Mother]'s claim is moot."[8] *See Moore*, 2009 UT App 128, ¶ 14; *see also Spencer*, 523 U.S. at 14. When a party has not shown the existence of "actual, adverse collateral consequences[,] . . . we will not presume that such collateral consequences exist." *Moore*, 2009 UT App 128, ¶ 17 (footnote omitted). Assuming, without deciding, that the collateral consequences doctrine applies in this civil context, we conclude that collateral consequences do not exist here, and therefore the exception does not preclude dismissal of Mother's appeal on mootness grounds.

## II. Public Interest Exception to Mootness

¶10   In addition to the collateral consequences exception, we may review a technically moot claim if we determine that the public interest exception applies. *See In re C.D.*, 2010 UT 66, ¶ 13, 245 P.3d 724. Retention of a mooted case should occur "only under exceptional circumstances and where the public interest clearly appears." *McRae v. Jackson*, 526 P.2d 1190, 1191 (Utah 1974). "'The public interest exception to the mootness doctrine arises when the case [1] presents an issue that affects the public interest, [2] is likely to recur, and [3] because of the brief time that any one litigant is affected, is capable of evading review.'" *In re C.D.*, 2010 UT 66, ¶ 13 (alterations in original) (additional internal quotation marks omitted) (quoting *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233). The exception requires satisfaction of all three prongs, as evidenced by the use of the word "and" in the case law establishing the exception. *See id.* ¶¶ 13-15 (using "and" to link the three prongs of the public interest exception together and dismissing a mooted claim that satisfied the first two requirements of the exception but did not satisfy the third requirement).

¶11   Here, the primary issues are whether the protective order was supported by sufficient evidence and whether the hearing was conducted in a proper, constitutional, manner. Subsidiary to Mother's evidentiary challenge is her assertion that hearsay evidence was improperly admitted and relied on by the juvenile court. Regarding the sufficiency challenge, we do not believe the specific factual arguments challenging the basis upon which this particular protective order was granted "present[] an issue that affects the public interest," *see id.* ¶ 13 (internal quotation marks omitted). Indeed,

---

[8]Additionally, the GAL asserts that since filing this appeal, Mother has voluntarily relinquished her parental rights in a district court proceeding. Although the record provided on appeal does not indicate whether Mother has actually voluntarily relinquished her parental rights, if she has, such a result further undermines Mother's collateral consequences argument.

"[t]he issues of which the courts frequently retain jurisdiction because of the public interest involved, although the immediate issues may have become moot, are class actions, questions of constitutional interpretation, issues as to the validity or construction of a statute, or the propriety of administrative rulings." *McRae*, 526 P.2d at 1191; *see also Ellis*, 2000 UT 101, ¶ 28 (determining that a mooted claim that does "not involve a class action, a question of constitutional interpretation, or an issue as to the validity or construction of a statute . . . does not present an issue that affects the public interest"). Mother's challenge to the factual basis of the protective order does not fall within any of those categories, and we are unconvinced that the issue otherwise presents an "exceptional circumstance[] . . . where the public interest clearly appears," *see McRae*, 526 P.2d at 1191. Accordingly, Mother's evidentiary claims fail to meet the public interest exception to mootness.[9] *Cf. Mortenson v. Turley*, 2009 UT App 67U, para. 5 n.3 (mem.) (noting that the public interest exception did not apply to a party's mooted appeal of the juvenile court's dismissal of a child protective order petition because the "factual determination" underlying the denial of the petition did not "fall[] within the exception to the mootness doctrine").

¶12    Similarly, we are not convinced that Mother's constitutional challenge satisfies the recurrence prong of the public interest exception. The Child Protective Order statute, *see generally* Utah Code Ann. §§ 78B-7-201 to -207 (2008 & Supp. 2011), and the Rules of Juvenile Procedure provide substantial guidance to the juvenile court regarding the manner in which child protective order proceedings ought to be conducted. Even if the juvenile court deviated from these procedures in the instant case, we are not convinced that the same issue "is likely to recur in a similar manner," *see Anderson v. Taylor*, 2006 UT 79, ¶ 10, 149 P.3d 352 (framing the recurrence prong of the public interest exception to involve the determination of whether a claim "is likely to recur in a *similar* manner" (emphasis added)). Accordingly, Mother's due process argument is also dismissed.[10]

---

[9]To the extent the statutory framework and the Rules of Juvenile Procedure are unclear as to the general applicability of the Rules of Evidence in matters like this, such uncertainty is best resolved by the legislature or relevant rule-making authority. This opinion should not be construed as passing judgment on whether the juvenile court, under the facts and circumstances of this case, properly admitted and relied on hearsay evidence.

[10]Additionally, Mother admits that her due process challenge was not preserved, thus requiring us to overcome another layer of "exceptional circumstances" in order to

(continued...)

CONCLUSION

¶13    Mother's challenges on appeal are moot.  The collateral consequences exception and the public interest exception to the mootness doctrine do not apply.  As a result, we dismiss the appeal.


_____
James Z. Davis,
Presiding Judge


-----

¶14    WE CONCUR:


_____
Carolyn B. McHugh,
Associate Presiding Judge


_____
William A. Thorne Jr., Judge

_____

        [10](...continued)
review the issue.  *See State v. Irwin*, 924 P.2d 5, 7-8 (Utah Ct. App. 1996) (noting that the preservation rule "bar[s a party] from raising [an issue] for the first time on appeal" but that one exception to the preservation rule is the "concept of exceptional circumstances," which "is not so much a precise doctrine, which may be analyzed in terms of fixed elements, as it is a descriptive term used to memorialize an appellate court's judgment that even though an issue was not raised below and even though the plain error doctrine does not apply, unique procedural circumstances nonetheless permit consideration of the merits of the issue on appeal").  Thus, we do not address Mother's due process challenge, and this opinion should not be construed as containing any ruling as to whether the juvenile court acted properly by interjecting questions and interrupting the parties throughout the termination petition hearing.