2008 UT 23

**Mark E. TOWNER, an individual, Petitioner and Appellee,**

v.

**Michael RIDGWAY, an individual, Respondent and Appellant.**

**No. 20060677.**

Supreme Court of Utah.

March 4, 2008.

Peter Stirba, Wayne K. Caldwell, Salt Lake City, for petitioner.

Brett P. Johnson, Troy L. Booher, Peter H. Donaldson, Salt Lake City, for respondent.

DURRANT, Justice:

## INTRODUCTION

¶ 1 This case concerns an appeal of an ex parte civil stalking injunction. Michael Ridgway, the party against whom the injunction was issued, argues that his conduct does not constitute stalking under the relevant statute. He also argues that the content of the injunction, specifically paragraph four, is unauthorized by Utah law and unconstitutional under the First Amendment to the United States Constitution. We do not reach Mr. Ridgway's first argument because the district court failed to make findings on the elements of the statute defining stalking. As to his second argument, we accept the concession of Mark Towner that paragraph four merely repeats earlier paragraphs in the injunction and, as a result, conclude that the content of the injunction is neither unauthorized by Utah law nor unconstitutional.

## BACKGROUND

¶ 2 On May 8, 2006, Mark Towner filed a petition for a civil stalking injunction against Michael Ridgway. Mr. Towner listed the following as support for his allegation of stalking: "Virtually every Republican Event. [sic] Mr. Ridgway will make comments to myself or my wife about past incidents where as officers in the party we ruled against him on numerous issues. I would say there has

[sic] been 10–15 incedents [sic] since 2002." Mr. Towner requested an ex parte stalking injunction enjoining Mr. Ridgway from stalking and directly or indirectly contacting him and his family. Mr. Towner also requested that Mr. Ridgway be enjoined from coming near him and his family at their residence, places of work, the University of Utah, and "Republican Events." Specifically, Mr. Towner requested that Mr. Ridgway be "[b]locked from Republican events such as conventions, central committee [sic] meetings, rallys [sic]" and that he be "[b]locked from handing out flyers that are not fact based about myself, my wife, or anyone else."

¶ 3 Mr. Towner submitted with his petition evidence corroborating his allegation of stalking, including a letter to the court describing the bases for his petition, copies of articles published by the news media regarding Mr. Towner and Mr. Ridgway, a copy of a letter authored by Mr. Ridgway regarding Mr. Towner that Mr. Ridgway distributed to delegates at the 2006 Salt Lake County Republican Convention, and a copy of an email sent by a third party to Mr. Ridgway. On the same day Mr. Towner filed his petition, Judge Maughan issued an ex parte stalking injunction against Mr. Ridgway.

¶ 4 The injunction papers were served on Mr. Ridgway on May 11, 2006, two days before he was to attend and speak at the Republican State Convention as a candidate for the United States Senate. Mr. Ridgway immediately filed a motion to dissolve or modify the injunction and requested an emergency hearing. Judge Peuler heard arguments on the motion on May 12, 2006, and ordered that the ex parte civil stalking injunction be modified to allow Mr. Ridgway to appear at the convention provided that he not communicate with the persons listed in the stalking injunction.

¶ 5 On May 16, 2006, after appearing and speaking at the convention without incident, Mr. Ridgway requested a hearing to contest the stalking injunction. The hearing was held before Judge Lindberg on June 16, 2006. Both Mr. Towner and his wife, Carrie Towner, testified concerning a series of incidents that led to Mr. Towner seeking the civil stalking injunction. First, Mr. Towner testified that at a 2003 Republican Party central committee meeting, Mr. Ridgway "approached me and in a very aggressive, derogatory way told me that I was a liar, I was a back stabber, that I had defeated his purpose and why didn't I vote the way he wanted me to vote." Mr. Towner next testified that, following a 2004 Republican Party committee meeting in which Mr. Towner voted contrary to the way Mr. Ridgway asked him to vote, Mr. Towner began receiving, and received for approximately two years thereafter, harassing e-mails and phone calls from Mr. Ridgway accusing Mr. Towner of being a traitor, liar, and backstabber.

¶ 6 Mrs. Towner testified that, at a central committee meeting sometime in 2003 or 2004, she made a comment to Mr. Ridgway and that

> he glared at me just, like in his eye just a glare and he kind of tensed up and leaned forward and took a couple of quick steps towards me and then [Mr. Ridgway], just right before he was like a foot and a half away from me, he just kind of turned forcefully, like turned himself and made himself leave the room.

Both Mr. Towner and his wife testified that the next incident with Mr. Ridgway took place at the Salt Lake County Republican Convention in April 2006, but that between approximately 2004 and the convention they had amicable contact with Mr. Ridgway, asked him to support Mr. Towner's candidacy for the Utah State Senate, and invited him to a barbeque they were "throwing for political support."

¶ 7 At the Salt Lake County Republican Convention in April 2006, during a caucus meeting in which delegates were selecting a candidate for the Utah State Senate, Mr. Ridgway, in contravention of the convention rules, passed out a letter explaining why he did not support Mr. Towner's candidacy for the senate. Mr. Towner ultimately lost the election. Mr. Towner testified that "Mr. Ridgway came up to me and in a very derogatory way he said something to the effect of, I guess I should apologize." Mr. Towner testified that he said, "Cheap shot, Mike," to which Mr. Ridgway replied, "[I]t doesn't stop here." Mrs. Towner testified that, at some point soon after this conversation occurred,

she was standing with her daughter when Mr. Ridgway approached them and said, "I didn't know the rules." Mrs. Towner testified that this

> just really upset me and at that point I told him never to talk to me again, to stay away from me and he just continued talking to me and moving forward towards me and we just kept backing up out of the room and then my daughter started saying something to him, started yelling something to him and I just grabbed, put my arms around her and put my hand out to Mike and said, don't talk to him Leslie, he gets violent, and I turned around and tried to get her out of the way.

The Towners then left the room. Mr. Towner testified that, during this confrontation, he was afraid for his own safety and that of his wife and daughter.

¶ 8 Finally, Mr. Towner testified that he fears that Mr. Ridgway could become violent or seek retaliation. Mrs. Towner also testified that she feels threatened by Mr. Ridgway and fears him.

¶ 9 After hearing this testimony, Judge Lindberg stated as follows:

> I have testimony from Mr. Towner about a personal confrontation in 2003. I have—although Mr. Towner has also recounted some kind of confrontation in 2004 but by Mr. Towner's own testimony, that confrontation was really not between him and [Mr. Ridgway] but rather between [Mr. Ridgway] and the Chair but I also have testimony from Mr. Towner that he then thereafter started receiving harassing calls and e-mails and at least one has been brought into evidence by [Mr. Ridgway] in which there clearly appears to be some harassment involved.
>
> I also have testimony by Mrs. Towner of having to put some distance between [Mr. Ridgway] and herself and the fears that were caused by the approach, one in the more distant past and one more recently.
>
> While it is somewhat probative that in April of this year [the Towners] invited [Mr. Ridgway] over to a barbeque, I am not persuaded that is determinate [sic] of the issue. I believe that the requirement of at least two or more occasions for purposes of the definition of course of conduct has been met....

> ... I am persuaded that [the Towners] have borne the burden by a preponderance of the evidence of establishing that they have had reasonable basis of fearing or being placed in emotional distress by the confrontations initiated by [Mr. Ridgway]. Accordingly, I am continuing the injunction....

¶ 10 Judge Lindberg thereafter entered an amended civil stalking injunction against Mr. Ridgway for a period of three years. This injunction enjoined Mr. Ridgway from stalking and contacting, "directly or indirectly through any form of communication including written, oral, or electronic means," Mr. Towner and his family. It also enjoined Mr. Ridgway from placing himself within twenty feet of Mr. Towner and his family at their home, places of work, the University of Utah College of Law, and Republican Party meetings. Finally, paragraph four of the injunction stated as follows: "Michael Ridgway is free to post communications on electronic media so long as the posting represents commentary on the substance of political positions taken by Mr. Towner, otherwise, Mr. Ridgway is enjoined from making comments directed at [Mr. Towner] or his family that are designed to harass or annoy."

¶ 11 Mr. Ridgway filed a timely appeal. We have jurisdiction pursuant to Utah Code section 78-2-2(3)(j) (2002).

## ANALYSIS

¶ 12 Mr. Ridgway argues that we should vacate the stalking injunction for two reasons. First, he argues that his conduct does not constitute the crime of stalking. Second, he argues that the injunction restrains his political speech and that its content is therefore unauthorized by Utah law and unconstitutional under the First Amendment to the United States Constitution. We address each of these arguments in turn.

I. THE DISTRICT COURT MUST ENTER FINDINGS OF FACT REGARDING EACH ELEMENT OF THE STALKING STATUTE BEFORE APPELLATE REVIEW IS APPROPRIATE

¶ 13 Utah Code section 77-3a-101 authorizes district courts to issue ex parte civil

stalking injunctions and provides that "'stalking' means the crime of stalking as defined in Section 76–5–106.5." [1] Section 76–5–106.5 (the "stalking statute"), in turn, defines "stalking" as follows:

A person is guilty of stalking who:

(a) intentionally or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person:

(i) to fear bodily injury to himself or a member of his immediate family; or

(ii) to suffer emotional distress to himself or a member of his immediate family;

(b) has knowledge or should have knowledge that the specific person:

(i) will be placed in reasonable fear of bodily injury to himself or a member of his immediate family; or

(ii) will suffer emotional distress or a member of his immediate family will suffer emotional distress; and

(c) whose conduct:

(i) induces fear in the specific person of bodily injury to himself or a member of his immediate family; or

(ii) causes emotional distress in the specific person or a member of his immediate family. [2]

¶ 14 A district court must find that all three elements of this statute are met in order to enter a civil stalking injunction. First, the court must find that the alleged stalker "intentionally or knowingly engage[d] in a course of conduct" that would cause a reasonable person to fear bodily injury or suffer emotional distress. [3] Mr. Ridgway argues that "[i]mplicit in the course of conduct requirement is proximity in time between alleged stalking incidents and the absence of normal relations between the victim and the alleged stalker in the interim." We disagree. Utah Code section 76–5–106.5(1)(a) defines "course of conduct" as "repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying verbal or written threats or threats implied by conduct or a combination thereof directed at or toward a person." And "repeatedly" is defined as "on two or more occasions." [4] The stalking statute does not speak to the timing of the incidents nor does it suggest, explicitly or implicitly, that the parties must maintain an adversarial relationship between incidents. Thus, the two or more events that constitute a course of conduct need not be proximate in time, and intervening conciliatory gestures will not preclude a court from finding a course of conduct.

■ ¶ 15 Second, the court must find that the accused stalker had or should have had knowledge that the victim of his stalking would fear bodily injury or suffer emotional distress. [5] And finally, the court must find that the victim actually feared bodily injury or suffered emotional distress as a result of the accused stalker's conduct. [6]

¶ 16 In this case, we are unable to review the question of whether Mr. Ridgway's conduct met the elements of the statute because the district court failed to make specific findings with respect to each element of the stalking statute. Although the court properly concluded that Mr. Ridgway's actions constituted a "course of conduct" because there were two or more incidents and the length of time between incidents and intervening amicable relations were of no import, the court did not make a finding as to whether Mr. Ridgway "intentionally or knowingly" engaged in this conduct. Moreover, the court made no findings with respect to whether Mr. Ridgway knew or should have known that the Towners would fear bodily injury or suffer emotional distress. And although the court concluded that the Towners had a reasonable basis for fearing Mr. Ridgway, it made no finding that they *in fact* feared bodily injury or suffered emotional distress. In order for us to engage in a meaningful review of a civil stalking injunction, we must

---

1. Utah Code Ann. § 77–3a–101(1) (2003).

2. *Id.* § 76–5–106.5(2).

3. *Id.* § 76–5–106.5(2)(a).

4. *Id.* § 76–5–106.5(1)(c).

5. *Id.* § 76–5–106.5(2)(b).

6. *Id.* § 76–5–106.5(2)(c).

have findings on each element of the stalking statute to review. We therefore remand this case to the district court for an entry of those findings.

## II. WE ACCEPT MR. TOWNER'S NARROW READING OF THE CIVIL STALKING INJUNCTION AND CONSEQUENTLY CONCLUDE THAT IT DOES NOT RESTRAIN MR. RIDGWAY'S POLITICAL SPEECH

¶ 17 Mr. Ridgway also argues that we should vacate the injunction because its content is unauthorized under Utah law and violates the First Amendment to the United States Constitution. Mr. Towner argues for a narrow interpretation of paragraph four of the injunction and essentially concedes that the paragraph at issue merely repeats another paragraph of the injunction. We accept Mr. Towner's concession.

¶ 18 Utah Code section 77–3a–101(5) authorizes courts to issue civil stalking injunctions with certain parameters. That section reads as follows:

If the court determines that there is reason to believe that an offense of stalking has occurred, an ex parte civil stalking injunction may be issued by the court that includes any of the following:

(a) respondent may be enjoined from committing stalking;

(b) respondent may be restrained from coming near the residence, place of employment, or school of the other party or specifically designated locations or persons;

(c) respondent may be restrained from contacting, directly or indirectly, the other party, including personal, written or telephone contact with the other party, the other party's employers, employees, fellow workers or others with whom communication would be likely to cause annoyance or alarm to the other party; or

(d) any other relief necessary or convenient for the protection of the petitioner and other specifically designated persons under the circumstances.

¶ 19 Mr. Ridgway argues that the content of the fourth paragraph of the civil stalking injunction does not fall within the parameters authorized by this section. Paragraph four of the stalking injunction reads as follows: "Michael Ridgway is free to post communications on electronic media so long as the posting represents commentary on the substance of political positions taken by Mr. Towner, otherwise, Mr. Ridgway is enjoined from making comments directed at [Mr. Towner] or his family that are designed to harass or annoy." Mr. Ridgway argues that section 77–3a–101(5) authorizes courts to enjoin stalkers from speaking to certain people but does not authorize courts to enjoin them from speaking on certain topics. But the injunction, he says, prohibits him from making public comments on the Internet with content that will "annoy" the Towners unless the comments are made in response to political positions taken by Mr. Towner. In addition, Mr. Ridgway argues that paragraph four is a content-based restriction on his speech in violation of the First Amendment to the United States Constitution. It does not withstand strict scrutiny, he says, because the injunction does not serve a compelling state interest and it is unclear what constitutes "annoying" speech.

¶ 20 Mr. Towner argues that Mr. Ridgway misconstrues the injunction. Mr. Towner explains paragraph four as follows:

[T]his provision only enjoins Mr. Ridgway from making comments *to* the Towners or making comments that are *directed to* the Towners, that are designed to "harass or annoy" the Towners. The injunction does not make it a criminal offense for Mr. Ridgway to make comments about the Towners to other people, *unless the comments are designed to reach* the Towners because the comments are *directed to* the Towners, causing further harassment.

We view Mr. Towner's explanation as a concession that paragraph four merely repeats paragraph three of the injunction, which enjoins Mr. Ridgway "from contacting [Mr.] Towner, directly or indirectly through any form of communication including written, oral, or electronic means" and restrains him from contacting Mr. Towner's family members through any of these means. Both paragraphs three and four therefore pre-

clude communications from Mr. Ridgway to the Towners, not communications by Mr. Ridgway about the Towners to others. These restrictions are well within the scope of Utah Code section 77–3a–101(5) and do not violate the First Amendment.

## CONCLUSION

¶ 21 We remand this case to the district court for an entry of factual findings on each element of the stalking statute. While we accept Mr. Towner's narrow reading of the fourth paragraph of the injunction and therefore find that the content of the injunction is authorized by Utah law and does not violate the First Amendment to the United States Constitution, we cannot, without the requisite findings by the district court, engage in a meaningful review of whether Mr. Ridgway's conduct constituted stalking and whether the injunction was appropriate.

¶ 22 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.