2009 UT App 128

**STATE of Utah, Plaintiff and Appellee,**

v.

**Arvin MOORE, Defendant and Appellant.**

**Arvin Moore, Petitioner and Appellant,**

v.

**Sheriff Dave Edmunds, Respondent and Appellee.**

**No. 20070672–CA.**

Court of Appeals of Utah.

May 14, 2009.

---

Randy B. Birch and Corey S. Zachman, Salt Lake City, for Appellant.

Jami R. Brackin, Coalville; and Paul R. Christensen and David R. Brickey, Park City, for Appellees.

Before Judges THORNE, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Arvin Moore appeals the denial of his Rule 65B Petition for Extraordinary Relief. *See* Utah R. Civ. P. 65B. Moore argues that he was denied sufficient due process while housed in the Summit County Jail (the Jail), awaiting sentencing on a criminal conviction. Specifically, Moore claims that the Jail failed to provide him with adequate notice, access to legal counsel, and the right to confront witnesses and present evidence with respect to an internal disciplinary hearing that resulted in his administrative segregation. We affirm.

## BACKGROUND

¶ 2 On February 2, 2007, Moore was convicted of aggravated sexual abuse of a child, a first degree felony, *see* Utah Code Ann. § 76–5–404.1 (2003) (current version as amended at Utah Code Ann. § 76–5–404.1 (2008)), and dealing in material harmful to a minor, a second degree felony, *see id.* § 76–10–1206 (2005) (current version as amended at Utah Code Ann. § 76–10–1206 (2008)). Moore was immediately transferred to the Jail to await sentencing.

¶ 3 While at the Jail, Moore received a disciplinary notification, informing him that he had been accused of "[e]ncouraging others to engage in any prohibited sexual activities." The notice indicated that there would be a disciplinary hearing two days later, on March 8, 2007. At the hearing, Moore requested an opportunity to consult with his legal counsel, which request was denied. Moore then attempted to invoke his right to remain silent, but he was questioned anyway and was encouraged to testify. In addition, Moore was not permitted to present or confront any witnesses. Following the proceeding, the hearing officer from the Summit County Sheriff's Office (SCSO) found Moore in violation of the Jail's policies and administratively segregated him from the Jail's general population. Moore also alleges that the SCSO placed a citation in his file.

¶ 4 Moore filed a Petition for Extraordinary Relief, *see* Utah R. Civ. P. 65B, on April 4, 2007, seeking relief from the alleged wrongful restraint on his personal liberty and an expungement of the citation from his prison disciplinary record. On May 15, 2007, the trial court heard argument on Moore's Petition for Extraordinary Relief, and on July 25, 2007, it entered an order holding that Moore's due process rights were not violated by the disciplinary proceedings. Moore filed this appeal on August 14, 2007. Thereafter, on December 4, 2007, Moore was sentenced and immediately transferred from

the Jail to the Utah State Prison (the Prison). He is serving, concurrently, an indeterminate term of five years to life on the aggravated sexual abuse of a child conviction and an indeterminate term of one to fifteen years for the dealing in material harmful to a minor conviction. This appeal involves only the propriety of the Jail disciplinary hearing and resulting segregation; Moore does not challenge the underlying convictions, resulting in his incarceration.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 5 Because we are reviewing a rule 65B petition, "this court looks at the administrative proceeding as if the petition were brought here directly, even though technically it is the district court's decision that is being appealed." *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 26 (Utah Ct. App.1991). "We give no deference to the district court's initial appellate review since it was a review of the record, which this court is just as capable of reviewing as the district court." *Id.* Instead, we review the actions of the SCSO. *See id.* "Due process challenges ... are questions of general law ...," *id.* at 28, which "we review using a correction of error standard, giving no deference to the [SCSO]'s legal determination," *id.* at 27.

## ANALYSIS

■ ¶ 6 Although inmates are not " 'wholly stripped' of their constitutional rights even in their incarcerated state," *Duran v. Morris*, 635 P.2d 43, 44 (Utah 1981) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)), "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). To rise to the level of an interest protected by the Fourteenth Amendment, the prisoner must have suffered a "deprivation of liberty with-

out due process of law." *Duran*, 635 P.2d at 45 (citing *Wolff*, 418 U.S. at 555, 94 S.Ct. 2963); *see also* U.S. Const. amend. XIV, § 1.

### I. Moore's Liberty Interest

■ ¶ 7 Moore asserts that he suffered a deprivation of liberty protected by the Due Process Clause of the United States Constitution [1] when he was segregated from the Jail's general population without adequate due process. *See id.* Liberty interests arise either directly from the Due Process Clause or from state law. *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 808 (10th Cir. 1999). In the prison context, state-created liberty interests

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484, 115 S.Ct. 2293 (internal citations omitted).

¶ 8 In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court concluded that a prisoner's thirty-day "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. Nevertheless, Moore argues that his lengthy solitary confinement—twenty-three hours per day for nine months—imposes the very type of atypical and significant hardship that does create an unconstitutional deprivation of liberty. For purposes of this decision, we assume, without deciding, that Moore is correct that his nine-month solitary confinement imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See id.* at 484, 115 S.Ct. 2293. Nevertheless, we do

---

1. Due process is also guaranteed by article I, section 7 of the Utah Constitution. Because Moore does not make a due process argument or provide any analysis under the Utah Constitution, we decline to consider his claim under the state constitution and instead rely on opinions interpreting the federal right. *See State v. Wor-* *wood*, 2007 UT 47, ¶ 16, 164 P.3d 397 ("[W]e have repeatedly refrained from engaging in state constitutional law analysis unless 'an argument for different analyses under the state and federal constitutions is briefed.' " (quoting *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988))).

not consider whether he was afforded due process during the disciplinary hearing because his claim is now moot.[2]

## II. Mootness

¶ 9 Our conclusion that Moore's appeal is moot is guided by the Utah Supreme Court's decision in *Duran v. Morris*, 635 P.2d 43 (Utah 1981). Duran, an inmate at the Utah State Prison, claimed that his due process rights were violated when he was confined in administrative segregation and transferred from medium security to maximum security, pending investigation of a stabbing incident. *See id.* at 44. Twelve weeks later, the prison authorities held a hearing and found Duran guilty of participating in the stabbing. *See id.* As a result, Duran was reclassified from medium to maximum security. *See id.* Duran filed a petition for a writ of habeas corpus while he was still reclassified to maximum security. *See id.* When the district court denied the writ, Duran appealed. *See id.* Before the appeal was resolved, however, the prison had returned Duran to medium security. *See id.* at 45.

¶ 10 The supreme court dismissed the appeal as moot, noting that mootness was established not simply because the prisoner had been released from administrative segregation but because "there are no collateral legal consequences attending [Duran's] temporary confinement." *Id.* ("[W]here the habeas corpus petitioner was 'not attacking the validity of his conviction,' but merely the administrative treatment he had received during confinement from which he had been released, . . . the appeal [was] moot . . . ." (quoting *Ayers v. Ciccone*, 431 F.2d 724, 726 (8th Cir.1970))). The *Duran* court explained that "collateral legal consequences may include the use of the conviction to impeach the petitioner's character or as a factor in determining a sentence in a future trial, as well as the petitioner's inability to vote, engage in certain businesses, or serve on a jury." *Id.* The supreme court then held that "[i]ntraprison administrative decisions such as the one

before us entail no collateral legal consequences of the kind that result from a criminal conviction." *Id.*

¶ 11 The Utah Supreme Court also concluded that Duran's appeal "must be dismissed as moot" because it could not "be shown to fit within a recognized exception to the mootness principle." *Id.* Where Duran complained "about the procedural mechanism by which one prisoner was transferred to a security classification" rather than about "the quality of living conditions affecting many prisoners," the *Duran* court held that his case did not raise an issue " 'of wide concern[ that] affects the public interest, is likely to recur in a similar manner, and because of the brief time any one person is affected, would otherwise escape judicial review.' " *Id.* at 46 (quoting *Wickham v. Fisher*, 629 P.2d 896, 899 (Utah 1981)). Consequently, the court dismissed the appeal as moot. *See id.*

¶ 12 In the present case, Moore is no longer in administrative segregation at the Jail. Instead, he has been transferred to the general population of the Prison to serve his sentence. Nevertheless, Moore contends that the disciplinary action taken against him at the Jail does have collateral legal consequences because it "affects every evaluation of his freedom which occurs while he is in prison" and "any parole decision . . . will be detrimentally affected by his disciplinary record." We disagree.

¶ 13 We first note that, as in *Duran,* the Jail's administrative action here entailed "no collateral legal consequences of the kind that result from a criminal conviction." *Id.* at 45. Indeed, the Jail's decision to place Moore in solitary confinement will have no bearing on his ability to vote, engage in certain businesses, or serve on a jury. *See id.* Nor could his disciplinary record be used to impeach his character or as a factor in determining a sentence in a future trial. *See id.*

¶ 14 Moore asserts, however, that his case can be distinguished from *Duran* because he is seeking an expungement of the matter

---

2. A claim is moot when "the requested judicial relief cannot affect the rights of the litigants." *Duran v. Morris,* 635 P.2d 43, 45 (Utah 1981).

from his interprison disciplinary record. Accordingly, Moore claims that his action is not moot because failure to expunge that record could affect his opportunity for parole. However, the hypothetical impact of the disciplinary record on a future parole hearing does not create a collateral legal consequence that prevents the conclusion that Moore's claim is moot. Indeed, the United States Supreme Court rejected a similar argument in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

¶ 15 In *Spencer*, the petitioner was on parole from a three-year sentence for burglary when he was apprehended for parole violations and sent back to prison. *See id.* at 3, 118 S.Ct. 978. Although the petitioner filed a writ of habeas corpus alleging that he was afforded inadequate due process during the parole revocation proceedings, he completed his underlying sentence before the matter could be resolved. *See id.* at 5–6, 118 S.Ct. 978. Consequently, the district court dismissed his writ as moot, and the Eighth Circuit affirmed. *See id.* at 6, 118 S.Ct. 978.

¶ 16 On certiorari to the United States Supreme Court, the petitioner argued that he had suffered injury sufficient to pursue his claim because the prior parole revocation could be used "to his detriment in a future parole proceeding." *Id.* at 14, 118 S.Ct. 978. The *Spencer* Court noted, "This possibility is no longer contingent on petitioner's again violating the law; he has already done so, and is currently serving a 7-year term of imprisonment." *Id.* Nevertheless, the Supreme Court concluded that a collateral legal consequence based upon a future parole decision was "a possibility rather than a certainty or even a probability." *Id.* The Supreme Court explained that, under the applicable state statute, "a prior parole revocation [does] not render an individual ineligible for parole[,] [but is] simply one factor, among many, that may be considered by the parole

authority in determining whether there is a substantial risk that the parole candidate will not conform to reasonable conditions of parole." *Id.* (alterations in original) (internal quotation marks omitted). Therefore, the *Spencer* Court rejected the petitioner's argument and affirmed the Eighth Circuit's dismissal of the action as moot. *See id.* at 14, 18, 118 S.Ct. 978; *see also Wilson v. Terhune*, 319 F.3d 477, 480–81 (9th Cir.2003) (following *Spencer* and holding that there is no presumption of collateral legal consequences in challenges to prison disciplinary proceedings); *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir.1998) (same); *cf. Sandin v. Conner*, 515 U.S. 472, 487, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (holding that the hypothetical future negative impact of prison disciplinary action on future parole hearings is not sufficient to create a protected liberty interest).

¶ 17 Like the statute considered in *Spencer*, Utah law provides no requirement that the parole board deny parole because of a prison disciplinary record. *See Neel v. Holden*, 849 P.2d 601, 602 (Utah Ct.App.1993) (holding that Utah's parole statutes contain no limitation on the parole board's discretion); *see also* Utah Code Ann. § 77–27–9 (2008) (parole proceedings). Thus, whether collateral legal consequences may or may not occur in Moore's case remains purely hypothetical. Indeed, Moore has shown no actual, adverse collateral consequences that have arisen from the failure to expunge his administrative record,[3] and we will not presume that such collateral consequences exist. *See Spencer*, 523 U.S. at 14, 118 S.Ct. 978. Therefore, Moore's claim is moot.[4]

¶ 18 Furthermore, as in *Duran*, Moore's complaint relates to the "procedural mechanism by which one prisoner was transferred to a security classification admittedly unobjectionable for those properly transferred."

---

3. Moore argues that he has suffered actual collateral consequences because his disciplinary record from the Jail has adversely affected his placement assignment at the Prison. However, counsel for Moore admitted at oral argument that there is no evidence in the record to support this allegation or even that Moore's record from the Jail was forwarded to the Prison. We therefore do not consider it.

4. We do not preclude an individual from establishing, as a factual matter, that an intraprison disciplinary matter had actual, not hypothetical, collateral legal consequences justifying review. Moore has simply failed to make such a showing.

*Duran v. Morris,* 635 P.2d 43, 46 (Utah 1981). Thus, Moore's petition does not address an issue of "wide concern." *Id.* (internal quotation marks omitted).

¶ 19 Likewise, contrary to the position of the dissent, Moore's due process argument did not escape judicial determination due to the "brief time any one prisoner is affected." *Id.* To rely on the exception to the mootness doctrine for issues capable of repetition yet evading review, Moore must show both that "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (alterations in original) (internal quotation marks omitted). Moore has failed to demonstrate that it is likely he will be returned to the Jail and that he would likely be placed in administrative segregation upon return. *See generally id.* at 18, 118 S.Ct. 978 (refusing to find repetition where subsequent parole and revocation were speculative). Consequently, Moore's claim does not fall within the extraordinary reasons that would compel us to consider the matter despite its having become moot as to Moore.[5]

## CONCLUSION

¶ 20 Because Moore is no longer confined in administrative segregation and there are no adverse collateral legal consequences flowing from the disciplinary actions on his record, the case before us is moot.

¶ 21 I CONCUR: JAMES Z. DAVIS, Judge.

---

5. Although we agree with the dissent that Moore's complaints are substantial and that our consideration of the merits of his claims "would provide guidance to Utah's many correctional facilities," *infra* ¶ 25, we do not believe that this case falls into an exception to the mootness doctrine that would allow us to address the merits in the context of a "case or controversy," U.S. Const. art. III, § 2; *see also Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

THORNE, Judge (dissenting):

¶ 22 Moore's appeal raises troubling issues about the due process protections afforded to the many inmates of Utah's jails and prisons. While Moore's individual case may be moot due to his release from administrative segregation, I believe that it falls squarely within the exception to the mootness doctrine recognized for issues that are capable of repetition yet evading review. *See State v. M.L.C.,* 933 P.2d 380, 382 (Utah 1997) ("While we typically refrain from adjudicating moot questions, we recognize an exception to this rule where the alleged wrong is capable of repetition yet evading review." (internal quotation marks omitted)). As such, I believe that we should review the merits of Moore's appeal, and I respectfully dissent from the majority opinion's decision not to do so.

¶ 23 I agree with the majority's conclusion that Moore's individual case is moot. He has been released from the administrative segregation resulting from his disciplinary proceeding,[1] and the hypothetical consequences asserted by Moore do not constitute "adverse collateral consequences" sufficient to avoid mootness, *see Duran v. Morris,* 635 P.2d 43, 45 (Utah 1981) ("Intraprison administrative decisions such as the one before us entail no collateral legal consequences of the kind that result from a criminal conviction.").[2] Nevertheless, I believe that we should review the merits of Moore's claim as presenting an issue that is capable of repetition yet evading review.

¶ 24 "[W]hether we reach the merits of a mooted issue in any particular case rests within our discretion." *Reynolds v. Reynolds,* 788 P.2d 1044, 1046 (Utah Ct.App.1990); *see also McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974). However, several factors have been identified as bearing on our exer-

---

1. I note that Moore remained in administrative segregation until he was transferred to the Prison on December 4, 2007. Thus, Moore was still in segregation when he filed his petition, when the district court denied his petition, and even when he initiated this appeal.

2. The majority opinion does not appear to foreclose the possibility that Moore could challenge his disciplinary proceeding if, at some point in the future, he does actually suffer collateral consequences therefrom.

cise of that discretion. The Utah Supreme Court has suggested that we ought to consider an issue despite its mootness as to a particular litigant when the issue "is of wide concern, affects the public interest, is likely to recur in a similar manner, and, because of the brief time any one person is affected, would otherwise likely escape judicial review." *Duran*, 635 P.2d at 46 (internal quotation marks omitted). I believe each of those factors is present in this case.

¶ 25 Although Moore's appeal would be decided in the context of the facts of his particular disciplinary proceeding, the resulting analysis would provide guidance to Utah's many correctional facilities. A substantial number of Utahns reside in Utah's jails and prisons at any given time, and prison rules and regulations necessarily govern every aspect of their lives and living conditions. Moore's appeal seeks to ensure that the basic fairness considerations of due process are available when enforcing the most punitive of these rules and regulations, an issue that is of vital concern to the incarcerated and should be of at least some concern to the public.

¶ 26 Moore argues that the disciplinary proceedings against him, which resulted in nine months of solitary confinement, suffered from numerous and substantial flaws. Specifically, Moore alleges that (1) he had no access to either the substantive or procedural rules governing his imprisonment, (2) he received no notice in advance of the hearing of the specific acts he was alleged to have committed in violation of institutional rules, (3) those actions were not alleged to have violated a specific rule, (4) he had no opportunity to cross-examine or confront witnesses against him, (5) he had no opportunity to call witnesses on his own behalf, and (6) he was denied an opportunity to consult with his retained attorney concerning either the substance or procedure of the hearing. All of these are fully capable of repetition and are all the more likely to be repeated in the absence of guidance from the appellate courts. Notwithstanding Moore's relatively lengthy segregation period, these allegations will avoid appellate review because Moore's administrative detention terminated before the appellate process could examine his case.

¶ 27 Each of the factors identified in *Duran* militates toward examining Moore's claim despite its mootness. Given Moore's allegations and the consequences he has already suffered, I believe that principles of fundamental fairness indicate that review is appropriate. The due process violations asserted by Moore are substantial and are not merely mundane complaints. As a result of his disciplinary proceeding, Moore spent nine months in what amounted to solitary confinement, with significant restrictions on the few freedoms and amenities available to him as an incarcerated person. While neither the gravity of the alleged due process violations nor the severity of Moore's punishment entitles him to a review of his moot claim as a matter of right, they are additional facts that I believe support our discretionary review of that claim.

¶ 28 For all of these reasons, I respectfully dissent from the majority opinion's refusal to consider Moore's case on its merits. Moore's lengthy administrative segregation period was still not long enough to allow complete— i.e., appellate—judicial review of his disciplinary proceedings. And, in the absence of such review, the alleged deficiencies in those proceedings are likely to recur, if not to Moore personally, then to others similarly situated. Therefore, I would reach the merits of the case as one capable of repetition yet otherwise evading judicial review.