2010 UT 66

GUARDIAN AD LITEM, Petitioner and Cross–Respondent,

v.

STATE of Utah, in the interest of C.D., A.D., J.T. and S.T., persons under eighteen years of age, Respondent and Cross–Respondent,

v.

A.D.T. and L.D., Respondents and Cross–Petitioners.

No. 20090052.

Supreme Court of Utah.

Nov. 19, 2010.

Martha M. Pierce, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., John M. Peterson, Carol L.C. Verdoia, Asst. Att'ys Gen., Salt Lake City, Joyce G. Smith, Blanding, William L. Schultz, Moab, Gregory Thornock, Lake Stevens, WA, Garvin Alfonso Hamilton, Baldwin Park, CA, for respondents.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case involves the State of Utah, Division of Child and Family Services' removal of Indian children from their Grandfather's custody and presents issues regarding the interpretation of the Indian Child Welfare Act (the "ICWA"). 25 U.S.C. §§ 1901–1963 (2006). We granted certiorari to determine whether the Utah Court of Appeals erred when it (1) determined that it had appellate jurisdiction to review whether the juvenile court complied with the ICWA's active efforts and placement requirements, and (2) affirmed the juvenile court's determination that, pursuant to the ICWA, further active efforts to prevent the breakup of the Indian family would be futile and thus were not required. After we granted certiorari, the children were placed with their respective biological fathers. Because the children's subsequent placement with their fathers renders the ICWA's active efforts and placement requirements moot, we decline to address the issues raised on certiorari.

## FACTUAL BACKGROUND

¶ 2 On December 2, 2002, the Division of Child and Family Services (the "Division") filed a Verified Petition for Protective Supervision (the "Petition") to remove children C.D., A.D., J.T., and S.T. from their Mother. Because the Mother and children are all members of or are eligible for membership in the Navajo Indian Tribe, the ICWA governs any "abuse and neglect" proceedings involving the children. A trial was held on the Petition and findings of fact, conclusions of law, and an order were filed on April 3, 2003. The juvenile court found that the Mother was incapable of caring for her children, and it ordered that the children's Grandfather be granted permanent custody and guardianship. However, the court did not terminate the Mother's parental rights. The Mother

and the children then moved in with the Grandfather.

¶ 3 On July 23, 2007, upon belief that the Grandfather was abusing the children, the Division removed the children from the Grandfather and initiated "abuse and neglect" proceedings. The juvenile court found that the Grandfather had abused the children on several occasions and placed custody and guardianship of the children with the Division. The juvenile court also found that the Division satisfied the provisions of the ICWA, which require active efforts to prevent the breakup of an Indian family. Specifically, the court held that the ICWA's active efforts requirement was satisfied in the previous placement, when the Division removed the children from their Mother and placed the children in the custody of the Grandfather, and that no further active efforts were required to keep the family together. The court then directed the Division to actively search for a placement for the children with relatives or members of the Navajo Nation. While awaiting a permanent placement, the Division separated the children and placed them in non–Indian foster homes.

¶ 4 Grandfather and Mother appealed the juvenile court's combined adjudication and dispositional order. The court of appeals issued two per curiam decisions affirming the juvenile court's findings but ordered further briefing on two issues related to the ICWA. *See L.D. v. State (State ex rel. A.D.)*, 2008 UT App 111, para. 10, 2008 WL 802930 (per curiam) (Grandfather's appeal); *A.D.T. v. State (State ex rel. C.D.)*, 2008 UT App 62, para. 7, 2008 WL 802934 (per curiam) (Mother's appeal). These issues were "(1) [w]hether the juvenile court properly determined that [the Division] made active efforts to prevent the break up of the Indian family, and; (2) [w]hether the juvenile court complied with [the] ICWA ... in the placements of the children." *State ex rel. A.D.*, 2008 UT App 111, para. 10, 2008 WL 802930.

¶ 5 In the court of appeals, the Mother and Grandfather argued that the juvenile court failed to comply with the ICWA in two respects. First, they argued that the juvenile court did not comply with the ICWA's active efforts requirement when the court removed the children from the Grandfather and denied him reunification services. *A.D.T. v. State (State ex rel. C.D.)*, 2008 UT App 477, ¶ 22, 200 P.3d 194. Second, they argued that the children's subsequent placement in non–Indian foster homes did not comply with the ICWA's preference placements. *Id.* ¶ 42. In addition to these issues, the State and the Guardian ad Litem (the "Guardian") raised the issue of whether the court of appeals had jurisdiction to review the juvenile court's adjudication and dispositional order for compliance with the ICWA's active efforts and placement requirements. *Id.* ¶¶ 11, 42. Specifically, they argued that a determination of compliance with the ICWA's active efforts and placement requirements is not required until the permanency hearing, which had not yet occurred and therefore was not before the court on appeal. *Id.*

¶ 6 The court of appeals first addressed whether it had jurisdiction over the two issues on appeal. It concluded that because compliance with the ICWA's active efforts and placement requirements are dispositional determinations, the juvenile court's combined adjudication and dispositional order was final as to these two issues and was properly before the court. *Id.* ¶¶ 19, 51. However, as to the merits of the placement preferences issue, because the Division was not on notice of the deadline for compliance, the court of appeals remanded the issue so that the Division could place the children according to the ICWA's placement preferences or so that it could "create a record demonstrating its attempts to comply and good cause for deviating from those preferences." *Id.* ¶¶ 52–54.

¶ 7 Next, the court of appeals addressed "[w]hether the juvenile court properly determined that [the Division] made active efforts to prevent the break[up] of the Indian family." *Id.* ¶ 7 (second alteration in original). It held that the active efforts expended towards the Mother in the previous proceeding did not satisfy the ICWA's active efforts requirement and that the Grandfather was entitled to active efforts in the case below because he was the children's Indian custodian. *Id.* ¶¶ 22–30. The court of appeals then described what active efforts requires. *Id.*

¶ 34. It stated that active efforts "connote a more involved and less passive standard than" the reasonable efforts required by the abuse and neglect provisions of the Utah Code. *Id.* ¶ 34. It concluded that while the Grandfather had not received any active efforts, such efforts were not required because they would have been futile. *Id.* ¶¶ 36–38. The court of appeals based its determination on the fact that before gaining custody of the children, the Grandfather had previous experience and training as a Division employee. *Id.* The court surmised that, given the Grandfather's extensive training in child-rearing techniques, any further efforts to reform his behavior would be futile. *Id.*

¶ 8 Guardian and Grandfather took issue with the court of appeals' decision. On January 21, 2009, Guardian filed a Petition for Writ of Certiorari, and on February 20, 2009, Grandfather filed a Cross–Petition for Writ of Certiorari. Guardian argues that the court of appeals erred when it determined that it had jurisdiction to review the juvenile court's determination regarding the ICWA's active efforts and placement preference requirements. Additionally, Guardian requests that we vacate the court of appeals' opinion in its entirety. In his cross-petition, Grandfather argues that the court of appeals erred when it found that the ICWA's active efforts requirement contains a futility exception.

¶ 9 After we granted certiorari on these issues, the children were placed with their respective biological fathers. The State subsequently filed a suggestion of mootness on the basis that the children's placement with their fathers moots the ICWA's requirement to provide active efforts to prevent the breakup of the Indian family. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (Supp.2010).

## ANALYSIS

¶ 10 The State and Guardian argue that the issues regarding the court of appeals' jurisdiction and ICWA compliance are now moot because the children have been placed with their respective biological fathers. Grandfather argues that the issue is not moot because the Division's finding that he is not entitled to active efforts will affect his

ability to gain custody of the children in the event the fathers subsequently relinquish or lose custody. He additionally argues that, if this court finds the issues moot, the issues should be considered under the public interest exception to the mootness doctrine because the issues are "of wide concern, would affect the public interest, [are] likely to reoccur in a similar manner ..., and would otherwise escape judicial review." We disagree and hold that the issues of jurisdiction and ICWA compliance are moot and do not fall under the public-interest exception to the mootness doctrine.

## I.   THE ISSUES ARE MOOT

¶ 11 First, we address whether the issues raised are moot. Generally, we will not decide a case that is moot. " 'A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants.' " *Ellis v. Swensen,* 2000 UT 101, ¶ 25, 16 P.3d 1233 (quoting *Burkett v. Schwendiman,* 773 P.2d 42, 44 (Utah 1989)). The instant case is moot because any decision we make regarding (1) compliance with the ICWA's active efforts requirement or (2) the court of appeals' jurisdiction will not affect the rights of the parties. As to the ICWA's active efforts requirement, the children's placements with their respective fathers effectively ends the issue of ICWA compliance. Any decision we make regarding this issue will not affect the Grandfather's alleged right to active efforts under the ICWA. The children's fathers have a constitutionally protected right to custody of their children. *See Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (stating that under the Due Process Clause of the United States Constitution, "[i]t is cardinal ... that the custody, care and nurture of [a] child reside first in the parents"). This constitutional right is not overridden by the ICWA. *See Dean v. Rampton,* 556 P.2d 205, 206–07 (Utah 1976) ("[I]t has been so long established and universally recognized, as to be hardly necessary to state, that if a statutory enactment contravenes any provision of the constitution, the latter governs."). Nor do the children's placements with their fathers conflict with

the ICWA's goal of keeping Indian families together. *See* 25 U.S.C. § 1901(4)–(5) (2006). Because the fathers have legal custody of the children, Grandfather is no longer an "Indian custodian" as defined by the ICWA. *See id.* § 1903(6) (defining Indian custodian as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child"). Accordingly, Grandfather is no longer entitled to active efforts under the ICWA. *See id.* §§ 1903, 1912, 1931(a) (indicating that the active efforts requirement applies to Indian custodians and parents). Because any determination we make as to active efforts will not affect Grandfather in a future proceeding to regain legal custody of the children, we conclude that a determination as to active efforts is moot.

¶ 12 Likewise, any determination we make regarding the court of appeals' jurisdiction will not affect the rights of the parties in relation to any issues other than those that we have already declared moot, as discussed above. Therefore, the issue of jurisdiction is also moot. In *Bennion v. Sundance Development Corp.*, the Utah Court of Appeals determined that the issue of subject matter jurisdiction could not be mooted as a result of the mootness of a collateral issue because a determination regarding subject matter jurisdiction would affect other nonmooted issues. 897 P.2d 1232, 1234 (Utah Ct.App. 1995). But unlike the issue of jurisdiction in *Bennion*, the jurisdictional challenge in this case relates solely to whether the court of appeals had jurisdiction to review the issues of ICWA compliance. Therefore, when the issue of ICWA compliance became moot, the issue of the court of appeals' jurisdiction to review ICWA compliance also became moot. Because any determination we make regarding compliance with ICWA's active efforts requirement or the court of appeals' jurisdiction will not affect the rights of the parties, both issues are moot.

## II. WE DECLINE TO APPLY THE PUBLIC INTEREST EXCEPTION TO THE MOOTNESS DOCTRINE

■ ¶ 13 Having concluded that the issues of ICWA compliance and the court of appeals' jurisdiction are moot, we next consider the public interest exception to the mootness doctrine. "Because mootness is a matter of judicial policy, the ultimate determination of whether to address an issue that is technically moot rests in the discretion of this court." *Ellis v. Swensen*, 2000 UT 101, ¶ 26, 16 P.3d 1233. We generally "will consider a technically moot issue if it falls within the 'public interest exception' to the mootness doctrine." *Id.* ¶ 25. "The public interest exception to the mootness doctrine arises 'when the case [1] presents an issue that affects the public interest, [2] is likely to recur, and [3] because of the brief time that any one litigant is affected, is capable of evading review.' " *Id.* ¶ 26 (quoting *Burkett v. Schwendiman*, 773 P.2d 42, 44) (Utah 1989).

■ ¶ 14 The issues presented regarding the interpretation of the ICWA and the court of appeals' jurisdiction may meet prongs one and two of the public interest exception to the mootness doctrine. But the issues fail to meet the third prong of the test because they are not likely to evade review in subsequent litigation. The types of issues likely to evade review are those that are inherently short in duration so that by the time the issue is appealed, a court is no longer in a position to provide a remedy. *See, e.g., Anderson v. Taylor*, 2006 UT 79, ¶ 11, 149 P.3d 352 (holding that failure to file a copy of search warrants issued and their supporting documentation was likely to evade review because it would be difficult to conceive of any instance where law enforcement would not have the incentive to immediately file the supporting documents thereby rendering the claim moot); *Kearns–Tribune Corp. v. Salt Lake Cnty. Comm'n*, 2001 UT 55, ¶¶ 32–33, 28 P.3d 686 (holding that a closed meeting in violation of the Public Meetings Act was a matter that would evade review because public officials were likely to publish the notes from the closed portion of the meeting before the matter was litigated); *Ellis*, 2000 UT 101, ¶ 27, 16 P.3d 1233 (holding that violation of the election code is likely to evade review because the election would always be over before the violation could be litigated).

¶ 15 Unlike cases where we have employed the public-interest exception to the mootness doctrine, the issues in this case are not inherently short in duration. Indeed, it is not likely that most foster or adoptive placements would terminate before issues surrounding the ICWA could be litigated. In fact, in those cases where a child has been removed from one parent's custody and placed in foster care because of neglect or abuse, we suspect that it is unlikely that the child will be reunited with the other natural parent at all. Rather, in most instances where the other natural parent is available, it is highly unlikely that a child found to be "abused or neglected" by one parent will be placed with another relative or in foster care rather than with the other available parent. Thus, in most cases where Indian children are placed in foster or adoptive placements, there will be ample opportunity to litigate the issues surrounding the ICWA. Because we conclude that the issues raised in the petitions for certiorari are not likely to evade review in future litigation, we decline to address them.

¶ 16 Having found the issues moot, we now turn to the Guardian's request that we vacate the court of appeals' opinion. The Guardian argues that vacatur is appropriate because the court of appeals erred in its determination that it had jurisdiction. We decline the Guardian's invitation to vacate. If a case becomes moot after an appeal has been filed, the decision of whether to vacate the lower court's order is a matter of discretion. *See, e.g., Cullimore v. Schwendiman,* 652 P.2d 915, 916 (Utah 1982) (exercising discretion to dismiss a case that became moot after an appeal had been filed when the lower court's order did not appear to affect the "subsequent proceedings or rights of the parties" (quoting *Merhish v. H.A. Folsom & Assocs.,* 646 P.2d 731, 733 (1982))).

¶ 17 Generally, if a case becomes moot after a decision by the court of appeals but before review of a petition for certiorari, the procedure is to vacate "the [lower court's] order and remand the case with instructions to dismiss." *See id.; see also* 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.10.3, at 623–24 (3d ed. 2008). The purpose behind this procedure is to prevent the lower court's judgment from having any res judicata effect on the parties. *Merhish,* 646 P.2d 731, at 733. ("If a case becomes moot after a timely appeal has been filed from a lower court order . . . that order should not be left standing to affect subsequent proceedings or rights of the parties."). But in those cases where there is no possibility that the lower court's decision will have any collateral consequences for the parties, we may exercise our discretion to dismiss the petition for certiorari as moot rather than to vacate the lower court's opinion. *See Cullimore,* 652 P.2d at 916.

¶ 18 In this case, neither party has presented any evidence that the lower court's decisions regarding the narrow issues of jurisdiction or ICWA compliance will have any collateral legal consequences on the parties, nor are we aware of such a possibility. Therefore, without expressing any approval or disapproval of the court of appeals' opinion, we conclude it is appropriate to merely dismiss the petitions for certiorari.

## CONCLUSION

¶ 19 The children's placements with their fathers make any determination that we could make regarding ICWA compliance or the court of appeals' jurisdiction merely advisory. Accordingly, we hold that these issues are moot. Additionally, we decline to review them under the public-interest exception to the mootness doctrine because they will not necessarily evade review in subsequent litigation. We therefore dismiss the petitions for certiorari.

¶ 20 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Judge CHRISTIANSEN concur in Justice PARRISH's opinion.

¶ 21 Due to his retirement, Justice WILKINS did not participate herein; Judge MICHELE M. CHRISTIANSEN sat.