IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Mark E. Towner, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20100208-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 9, 2012) |
| Michael Ridgway, | ) | |
| | ) | 2012 UT App 35 |
| Respondent and Appellant. | ) | |

-----

Third District, Salt Lake Department, 060907552
The Honorable Sandra N. Peuler

Attorneys:      Michael Ridgway, Salt Lake City, Appellant Pro Se
                Mark E. Towner, Salt Lake City, Appellee Pro Se

-----

Before Judges McHugh, Voros, and Orme.

VOROS, Associate Presiding Judge:

¶1      Michael Ridgway appeals the trial court's order of dismissal.  We dismiss this appeal as moot.[1]

_____

1.  We have determined that "the decisional process would not be significantly aided by oral argument."  *See* Utah R. App. P. 29(a)(3).

¶2     Mark E. Towner obtained a civil stalking injunction against Ridgway in 2006.[2] Ridgway appealed the injunction, arguing in part that his conduct did not constitute stalking. *See Towner v. Ridgway*, 2008 UT 23, ¶ 12, 182 P.3d 347, *superseded by statute with regard to the definition of "stalking" as stated in Bott v. Osburn*, 2011 UT App 139, ¶¶ 6–11, 257 P.3d 1022.  In March 2008, the supreme court remanded the case for entry of findings, stating that it could not decide the issue absent specific findings as to each element of the stalking statute. *See Towner*, 2008 UT 23, ¶¶ 16, 21.  However, the trial court never entered findings.  On July 9, 2009, Ridgway filed a motion asking the trial court to dismiss the case and vacate the injunction.  The court granted the motion to dismiss on the ground that the injunction had expired.[3]  But the court refused to retroactively vacate the injunction, reasoning that because the injunction was no longer in force, the dispute was moot.

¶3     Ridgway challenges the trial court's refusal to vacate the injunction, yet he does not address the question of mootness in his opening brief.  This omission would normally doom his appeal. *See Duchesne Land, LC v. Division of Consumer Protection*, 2011 UT App 153, ¶ 8, 257 P.3d 441 ("Because Appellants have not addressed the actual basis for the district court's ruling, they have failed to persuade us that the district court's ruling constituted error . . . ."), *cert. denied* 262 P.3d 1187 (Utah 2011).  He does address mootness in his reply brief.  This effort does not rescue Ridgway, though, because "[i]t is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by

---

2. The history of this dispute is recounted more fully in *Towner v. Ridgway*, 2008 UT 23, 182 P.3d 347.

3. The court reached this conclusion based on its reading of the amended civil stalking injunction issued against Ridgway, which was effective "for a period of no less than three years," and the civil stalking injunction statute, which provides that "for enforcement purposes, a certified copy of an ex parte civil stalking injunction or civil stalking injunction is presumed to be a valid existing order of the court for a period of three years from the date of service of the ex parte civil stalking injunction on the respondent," Utah Code Ann. § 77-3a-101(11)(a) (2008).  In this case, the ex parte civil stalking injunction was served on Ridgway on May 11, 2006.  The injunction therefore expired on May 11, 2009—nearly two months before Ridgway filed his motion to dismiss and vacate.

the appellate court," *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (citation and internal quotation marks omitted).

¶4      However, Ridgway argues that we should vacate the injunction on the ground that the trial court never had subject matter jurisdiction to enter it. Towner's petition for the stalking injunction was not signed or notarized. *See* Utah Code Ann. § 77-3a-101(2) (2008) (requiring a verified petition).[4] Furthermore, the petition allegedly lacked the specificity required by statute.[5] *See id.* § 77-3a-101(4)(c) (requiring the petition to list "specific events and dates of the actions constituting the alleged stalking"). Ridgway argues that these defects are jurisdictional and that the stalking injunction was therefore invalid.

¶5      "Because subject matter jurisdiction goes to the heart of a court's authority to hear a case, it is not subject to waiver and may be raised at any time . . . ." *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 (citation omitted). However, the issue of subject matter jurisdiction may itself be moot. In *In re C.D.*, 2010 UT 66, 245 P.3d 724, the supreme court held that, where any determination an appellate court might make

---

4. This section was amended after the instant case arose, but the relevant portions have not changed. *See* Utah Code Ann. § 77-3a-101(2) amend. notes (2008). We cite to the current version of the statute for the reader's convenience.

5. Ridgway also argues that the injunction was jurisdictionally defective because Towner's petition did not include corroborating evidence of the allegations. However, the record clearly demonstrates that Towner submitted corroborating evidence with his petition. As the supreme court noted on Ridgway's first appeal,

> Mr. Towner submitted with his petition evidence corroborating his allegation of stalking, including a letter to the court describing the bases for his petition, copies of articles published by the news media regarding Mr. Towner and Mr. Ridgway, a copy of a letter authored by Mr. Ridgway regarding Mr. Towner that Mr. Ridgway distributed to delegates at the 2006 Salt Lake County Republican Convention, and a copy of an email sent by a third party to Mr. Ridgway.

*Towner*, 2008 UT 23, ¶ 3.

regarding a lower court's jurisdiction "will not affect the rights of the parties in relation to any issues other than those . . . already declared moot," "the issue of jurisdiction is also moot." *See id.* ¶ 12; *see also In re S.Y.T.*, 2011 UT App 407, ¶ 12 n.5, 696 Utah Adv. Rep. 19 (declining to adjudicate question of subject matter jurisdiction where the issue could not "affect the rights of the litigants" and thus was "essentially moot"); *Duchesne Land*, 2011 UT App 153, ¶ 9 (stating that claim of lack of subject matter jurisdiction might be moot); *In re S.K.*, 1999 UT App 261, ¶ 1 n.2, 987 P.2d 616 (noting that "because we dismiss this appeal as moot, we do not reach the issue of whether we also lack jurisdiction"). Under this rule, whether a court has jurisdiction to consider a moot question is itself a moot question. Therefore, before we address the merits of Ridgway's jurisdictional argument, we consider whether the underlying issue is moot.

¶6    "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Burkett v. Schwendiman*, 773 P.2d 42, 43–44 (Utah 1989) (declining to address challenge to state's compliance with statutory sworn statement requirement for revoking a driver license because the revocation had expired). "Where collateral legal consequences may result from an adverse decision, courts have generally held an issue not moot and rendered a decision on the merits." *In re Giles*, 657 P.2d 285, 286 (Utah 1982).

¶7    "The doctrine of collateral legal consequences is chiefly applied in criminal cases . . . ." *Id.*; *see also Barnett v. Adams*, 2012 UT App 6, ¶ 9, 699 Utah Adv. Rep. 12 (assuming without deciding that the collateral consequences doctrine applied to a civil case). Unless a party is challenging a criminal conviction, "we will not presume that such collateral consequences exist." *See State v. Moore*, 2009 UT App 128, ¶ 17, 210 P.3d 967 (citing *Spencer v. Kemna*, 523 U.S. 1, 14 (1998)). Rather, "a litigant must show that the collateral consequences complained of are not merely hypothetical or possible but that they are probable and represent actual and adverse consequences." *Barnett*, 2012 UT App 6, ¶ 8; *see also Moore*, 2009 UT App 128, ¶¶ 14–17. Furthermore, the consequences must be "imposed by law" as a direct result of the challenged action. *See Phillips v. Schwendiman*, 802 P.2d 108, 109–10 (Utah Ct. App. 1990) (finding increased insurance premiums insufficient and relicensing fee too indirect to qualify as collateral legal consequences of a revoked, but later reinstated, driver license); *see also Moore*, 2009 UT App 128, ¶ 17 (looking to statute to determine the continuing legal effect of a prison disciplinary record).

¶8     "Such collateral legal consequences may include the use of the conviction to impeach the petitioner's character or as a factor in determining a sentence in a future trial, as well as the petitioner's inability to vote, engage in certain businesses, or serve on a jury." *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981); *see also In re Giles*, 657 P.2d at 287 (stating that civil psychiatric commitment may be used "as character or credibility evidence, or in future civil commitment proceedings"); *In re A.W.*, 2002 UT App 159, ¶ 4, 48 P.3d 257 (mem.) (noting that adjudication of child as dependent may be used in future adjudications involving parents and parents may be liable for retroactive support payments even after child reaches age of majority). *But see Barnett*, 2012 UT App 6, ¶ 9 (holding that collateral consequences from juvenile court's adjudication of abuse are not established by "simply list[ing] potential legal impairments that generally impact a person" in similar situations).

¶9     Ridgway points to no actual, adverse legal consequences of denying his motion to vacate the underlying proceeding.  He discusses some specific consequences of the injunction itself—alleging, for example, that he was arrested for violating it—but these consequences relate to the effects of the injunction before it expired.  Other specific consequences Ridgway identifies—such as harm to his reputation, family relationships, and employment prospects—are not "imposed by law."  *See Phillips*, 802 P.2d at 109–10.  And although Ridgway invites the court "to imagine, hypothetically speaking," the harms he has suffered as a result of "persistent and very public allegations of criminal behavior," he does not identify any legal harms that vacating the injunction for lack of jurisdiction—as opposed to dismissing the case as moot—would cure.

¶10    Ridgway further states that "in Utah, and in many other states, the imposition of a civil stalking injunction takes away a respondent's right to carry a firearm, thus quashing a right vouchsafed in the Second Amendment of the United States Constitution."  However, Ridgway offers no support for this assertion, which does not appear to correctly state the law in Utah.  *See* Monica Maio, Note, *Stalkers and Firearms: A Dangerous Mix, Utah's Civil Stalking Injunction Statute*, 7 J. L. & Fam. Stud. 263, 274 (2005) (stating that under state and federal law in Utah, "a non-cohabitant stalker who engages in the same dangerous behavior as the cohabitant stalker may lawfully possess a firearm, even while subject to a civil stalking injunction").  Nor does it address the key question here, which is the effect of an *expired* civil stalking injunction on Ridgway's rights.

¶11    Absent actual, adverse legal consequences flowing from the expired injunction, any determination we might make regarding the trial court's jurisdiction will not affect the rights of the parties. "Therefore, the issue of jurisdiction is . . . moot." *In re C.D.*, 2010 UT 66, ¶ 12, 245 P.3d 724. We accordingly dismiss this appeal. *See In re S.K.*, 1999 UT App 261, ¶ 1, 987 P.2d 616 ("Because the issue raised is moot, we dismiss the appeal for lack of jurisdiction.").

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

                                        -----

¶12    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
Gregory K. Orme, Judge