2013 UT App 239

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF H.S., A PERSON UNDER
EIGHTEEN YEARS OF AGE.

A.S.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20120891-CA
Filed October 10, 2013

Fourth District Juvenile Court, Heber City Department
The Honorable Mary T. Noonan
No. 1010116

Mary Ann Hansen, Attorney for Appellant
John E. Swallow and John M. Peterson, Attorneys
for Appellee
Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and
J. FREDERIC VOROS JR. concurred.

CHRISTIANSEN, Judge:

¶1     A.S. (Mother) appeals from the juvenile court's permanency
order granting custody of H.S. (Child) to D.K.W. (Father). Mother
argues that the court erred in interpreting and applying the
permanency statute. *See* Utah Code Ann. § 78A-6-314(1)(a), (2)(a)
(LexisNexis 2012). Mother also appeals the juvenile court's denial
of what Mother characterizes as her "custody motion," arguing that

the court violated her due process rights. We determine that the issues Mother raises on appeal are mooted by the parties' stipulation. Accordingly, we dismiss Mother's appeal.

¶2     After a hearing on November 4, 2011, based upon Mother's long-standing substance abuse and also many domestic disputes between Mother and Father, the juvenile court ordered that Child be removed and placed in the temporary legal custody of the Division of Child and Family Services (DCFS). At a disposition hearing on January 5, 2012, the juvenile court set the primary permanency goal as Child's reunification with Father and ordered DCFS to provide Father with reunification services for a period of twelve months. The court did not order reunification services for Mother because she had received reunification services in the past and because Mother was still struggling to overcome a significant prescription drug abuse problem. Mother subsequently filed a motion seeking reconsideration of the court's denial of reunification services to her, which motion the court denied. The court scheduled several further review hearings, including an eleven-month review hearing scheduled for October 4, 2012, and a permanency hearing scheduled for November 1, 2012.

¶3     At the October 4 review hearing, the juvenile court found that Father had substantially complied with the service plan and all other reunification requirements. Accordingly, the court terminated DCFS's custody, granted permanent custody and guardianship to Father, and struck the November 1 permanency hearing because it was no longer necessary. The court also ordered Mother and Father to participate in mediation—scheduled for November 5—so Mother and Father could resolve parent-time issues and develop a co-parenting plan. The court then scheduled a hearing for December 20 to review any agreement that might emerge from the parents' mediation.

¶4     At the conclusion of mediation, Father and Mother stipulated to the following terms:

1. The parties agree that both parents will [urine analysis] test today. If the mother tests positive then she will test every 2 weeks until she tests negative and her parent time will be supervised. If she, or when she, tests negative then her parent time will become unsupervised.

2. The mother will have parent time in alternating weekends and on Wednesday evening and holiday time as set out in the statutory guidelines.

3. The parties agree that each parent will have a right of first refusal for childcare while the other parent is working or unable to care for the child.

4. The parties agree to joint legal custody with the custodial father having the final say, if the parents are unable to agree. The mother may bring the matter to mediation if there is non-agreement.

5. The parties agree to sole physical custody to the father subject to the mother's parent time as set out herein.

6. The parties agree to revisit custody and parent time on or about 3 months from this date.

Following the December 20 review hearing, the juvenile court issued an order in which it incorporated Mother and Father's mediated agreement "in its entirety."

¶5    Mother raises two issues on appeal. First, she argues that the juvenile court erred in its interpretation and application of the permanency statute by not considering Mother's eligibility for physical custody of Child during the October 4 hearing. Second, Mother contends that the juvenile court violated her due process

rights by denying what Mother characterizes as her "custody motion."

¶6     Before we can reach the merits of Mother's claims, we must first decide whether her claims are mooted by the mediated agreement and December 20 order of the juvenile court. "Generally, we will not decide a case that is moot." *In re C.D.*, 2010 UT 66, ¶ 11, 245 P.3d 724. "An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *In re Adoption of L.O.*, 2012 UT 23, ¶ 8, 282 P.3d 977 (citation and internal quotation marks omitted). In other words, "[w]here the issues that were before the trial court no longer exist, the appellate court will not review the case." *Id.*

¶7     On October 18, 2012, Mother filed her notice of appeal of the juvenile court's October 4 permanency order. Mother and Father then entered into the mediated agreement on November 5. Mother's appeal applies only to the October 4 permanency order—not the December 20 review order that incorporated the mediated agreement in its entirety. This procedural sequence is significant because it illustrates that during the pendency of Mother's appeal, the attendant circumstances changed such that the relevant custody "controversy [was] eliminated, thereby rendering the relief requested [by Mother] . . . of no legal effect." *See id.* (citation and internal quotation marks omitted).

¶8     Mother's requests for relief on appeal demonstrate her intent to obtain physical custody, or some form of physical custody, of Child—issues that were resolved during the pendency of this appeal through the mediated agreement and the December 20 order. For example, with respect to her first claim, Mother requests that this court "reverse the [p]ermanency [o]rder at issue herein and remand with direction to the juvenile court to determine permanency of the Child with regard to the Mother" and "further direct the juvenile court to consider [certain statutory factors] in determining whether a joint physical custody arrangement would

be appropriate for the Child." As for her second claim, Mother again requests reversal of the permanency order and remand to the juvenile court. According to Mother, her "[c]ustody [m]otion should have been determined by the [juvenile] court and . . . Mother's progress and efforts to change weighed against . . . Father's progress in determining permanency and custody." Yet Mother voluntarily stipulated to the physical custody and parent-time arrangements in the mediated agreement, which agreement was ultimately made binding on Mother through the December 20 order. "Generally, stipulations are binding on the parties and the court. Thus, a stipulation entered into by the parties and accepted by the court acts as an estoppel upon the parties thereto and is conclusive of all matters necessarily included in the stipulation." *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 13, 296 P.3d 709 (citation and internal quotation marks omitted). Indeed, Mother agreed "to joint legal custody with the custodial father having the final say, if the parents are unable to agree," and "to sole physical custody to the father subject to the mother's parent time." Therefore, based upon Mother's agreement, no controversy regarding physical custody remains and Mother's requests for relief, if granted by this court, would have no legal effect. *See In re Adoption of L.O.*, 2012 UT 23, ¶ 13.

¶9      Our holding is consistent with the Utah Supreme Court's decision in *In re Adoption of L.O.*, 2012 UT 23, 282 P.3d 977. In that case, the Navajo Nation (the Nation) challenged the state's compliance with certain provisions of the Indian Child Welfare Act with respect to L.O., a child who was an enrolled member of the Nation. *Id.* ¶¶ 1–2. The Nation moved the juvenile court to transfer jurisdiction of the child's case to the Nation. *Id.* ¶ 3. The court denied the motion, and the Nation appealed. *Id.* ¶¶ 3–4. During the pendency of the appeal, the Nation and the state entered into a stipulation whereby the Nation consented to the child's adoption by foster parents. *Id.* ¶ 5. The supreme court held that the "case [was] moot because the Nation's consent to [the child's] adoption eliminated the controversy." *Id.* ¶ 8. Similarly, here, Mother's decision to stipulate to the terms in the mediated agreement, as

incorporated into the court's binding December 20 order, took place during the pendency of Mother's appeal and effectively eliminated the custody controversy in this case.

¶10    Mother argues that her appeal is not moot because she did not stipulate to Father's sole physical custody. She argues that because the question of sole physical custody had already been decided against her in the juvenile court's October 4 order, that issue could not have been altered by the mediation. Therefore, Mother asserts "[i]t would be absurd to think that . . . Mother, having submitted herself to court-ordered mediation on the issue of her parent-time, somehow mooted her appellate issue [of physical custody] absent either actions or verbiage amounting to a waiver," and "[i]t is axiomatic that . . . Mother did not have discretion to ignore nor stipulate to something that she was already court ordered to follow."

¶11    The plain language of the stipulation states that the parties "agree to sole physical custody to the father." Although it is true that the court ordered Mother to participate in mediation, nothing in the record indicates that Mother was compelled to stipulate to any specific terms in the mediation. Indeed, it seems that Mother could have participated in the mediation and refused to enter into any agreement. Also, her argument that the issue of sole physical custody could not have been amended through mediation appears unsupported by the record. Mother and DCFS both stated at the October 4 hearing that Mother's physical custody rights may be an appropriate issue for mediation. And nothing in the court's October 4 order purported to define the parameters of the mediation. The order notes only that mediation was scheduled for November 5. Also, though the juvenile court instructed Mother and Father at the close of the October 4 hearing that the purpose of the mediation was to develop "an appropriate, thoroughly vetted, carefully constructed parenting plan," the court did not state that the issue of physical custody could not be addressed during the mediation. Indeed, the purpose of the October 4 hearing was to review the issue of custody as between DCFS and Father. The

juvenile court left the issue of Mother's custodial rights for another day. The fact that the court later incorporated the mediated agreement "in its entirety," and thereby substantially modified its October 4 order, further suggests that the court would have accepted a change to Father's physical custody rights had Mother and Father so agreed.

¶12    In conclusion, we hold that both of Mother's custody claims on appeal are moot because Mother voluntarily stipulated to the physical and legal custody arrangements in the mediated agreement. Accordingly, we need not reach the parties' other arguments on appeal.

¶13    Dismissed.

————————